# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | |
|---|---|
| TFOR LLC,<br><br>     Plaintiff,<br><br>  v.<br><br>VIRTUSTREAM, INC.,<br><br>     Defendant. | Civ. Act. No. 2:16cv602 (HCM/LRL) |

## DEFENDANT VIRTUSTREAM INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS TFOR LLC'S FIRST AMENDED COMPLAINT

Ahmed J. Davis (Va. Bar No. 43982)
Jared M. Hartzman (Va. Bar No. 89234)
FISH & RICHARDSON P.C.
1425 K Street, N.W., Suite 1100
Washington, DC 20005
Phone: (202) 783-5070

Adam J. Kessel (admitted *pro hac vice*)
FISH & RICHARDSON, P.C.
One Marina Park Drive
Boston, MA 02110-1878
Phone: (617) 542-5070

Thomas A. Brown (admitted *pro hac vice*)
Dell Inc.
176 South Street
Hopkinton, MA 01748
Phone: (508) 435-1000

*Counsel for Defendant Virtustream, Inc.*

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ............................................................................... 2

III.    LEGAL STANDARDS ....................................................................................... 4

    A.    Subject Matter Jurisdiction ....................................................................... 4

    B.    Failure to State a Claim............................................................................. 5

IV.    LEGAL ARGUMENT ....................................................................................... 6

    A.    The "First Claim" of the First Amended Complaint Presents No Case or Controversy..... 6

        1.    The First Claim is Moot....................................................................... 7

        2.    The First Claim Also Fails to State a Claim ....................................... 8

    B.    Plaintiff Fails to State a Claim for Misappropriation of Invention................................... 10

    C.    Plaintiff Fails to State a Claim for Misappropriation of Trade Secret............................ 12

    D.    Plaintiff Fails to State a Claim for Conversion of Property............................................. 15

    E.    Plaintiff Fails to State a Claim for Misappropriation of Trade Secret Under 18 U.S.C. § 1836(b)(c) and §1839(3), (4) and (5)............................................................... 17

    F.    Plaintiff Fails to State a Claim for Breach of Contract and/or Breach of Constructive Trust ................................................................................................... 18

        1.    Breach of Contract ............................................................................. 18

        2.    Breach of Constructive Trust .............................................................. 20

    G.    Plaintiff Fails to State a Claim for Fraud in the Inducement ............................................ 21

    H.    Dismissal With Prejudice Is Appropriate Because Plaintiff Cannot Adequately Cure Its Pleading Defects ................................................................................. 24

V.    CONCLUSION.................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abi-Najm v. Concord Condo., LLC,*
   280 Va. 350, 699 S.E.2d 483 (2010)................................................................21, 23

*Administrators of the Tulane Educ. Fund v. Ipsen Pharma, S.A.S.,*
   771 F. Supp. 2d 32 (D.D.C. 2011) ..................................................................9, 10

*Afilias PLC v. Architelos, Inc.,*
   2016 WL 1245006 (E.D. Va. Mar. 23, 2016) ................................................11, 17

*Already, LLC v. Nike, Inc.,*
   133 S. Ct. 721 (2013).........................................................................................7, 8

*Asghari-Kamrani v. United Servs. Auto. Ass'n,*
   2016 U.S. Dist. LEXIS 170929 (E.D. Va. Dec. 9, 2016) ................................21, 22

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...................................................................................... \ *passim*

*Babcock & Wilcox Co. v. Areva NP, Inc.,*
   292 Va. 165, 788 S.E.2d 237 (2016)......................................................................15

*Bell Atl. Corp v. Twombly,*
   550 U.S. 544 (2007)........................................................................................5, 6

*Benitec Austl., Ltd. v. Nucleonics, Inc.,*
   495 F.3d 1340 (Fed. Cir. 2007)..............................................................................4

*Buchanan v. Buchanan,*
   266 Va. 207, 585 S.E.2d 533 (2003)....................................................................20

*Cardinal Chem. Co. v. Morton Int'l, Inc.,*
   508 U.S. 83 (1993).................................................................................................4

*Carfax, Inc. v. Red Mountain Techs.,*
   119 F. Supp. 3d 404, 417 (E.D. Va. 2015) ...........................................................4

*City of Erie v. Pap's A.M.,*
   529 U.S. 277 (2000)..............................................................................................5

*Davis v. MRS BPO, LLC,*
   2015 WL 4326900 (N.D. Ill. July 15, 2015).........................................................24

*Dean v. Morris*,
    287 Va. 531, 756 S.E.2d 430 (2014)....................................................................................18

*Delano Farms Co. v. California Table Grape Comm'n*,
    940 F. Supp. 2d 1229 (E.D. Cal. 2013)............................................................................10

*E. W., LLC v. Rahman*,
    873 F. Supp. 2d 721 (E.D. Va. 2012) ........................................................................15, 16

*Evans Cooling Sys., Inc. v. Gen. Motors Corp.*,
    125 F.3d 1448 (Fed. Cir. 1997)........................................................................................10

*Faryniarz v. Ramirez*,
    2015 U.S. Dist. LEXIS 151472 (D. Conn. Nov. 9, 2015) ................................................7, 10

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir. 1999) ............................................................................................21

*Hernandez v. Wells Fargo Home Mortg.*,
    2016 WL 183478 (D. Nev. Jan. 14, 2016)........................................................................24

*HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co*,
    600 F.3d 1347 (Fed. Cir. 2010).........................................................................................8

*Hydrogen Master Rights, Ltd. v. Weston*,
    No. 2017 WL 78582 (D. Del. Jan. 9, 2017)......................................................................17

*Informatics Applications Grp., Inc. v. Shkolnikov*,
    836 F. Supp. 2d 400 (E.D. Va. 2011) ....................................................................12, 13, 14

*Janssen Pharmaceutica, N.V. v. Apotex, Inc.*,
    540 F.3d 1353 (Fed. Cir. 2008).........................................................................................4

*Lewis v. Continental Bank Corp.*,
    494 U.S. 472 (1990)..........................................................................................................5

*MicroStrategy, Inc. v. Bus. Objects, S.A.*,
    331 F.Supp.2d 396 (E.D.Va.2004) ..................................................................................13

*MicroStrategy Inc. v. Business Objects, S.A.*,
    429 F.3d 1344 (Fed.Cir.2005)..........................................................................................12

*Mortarino v. Consultant Eng'g Servs., Inc.*,
    251 Va. 289, 467 S.E.2d 778 (1996)....................................................................21, 22, 23

*Phillips v. Mazyck*,
    273 Va. 630, 643 S.E.2d 172 (2007)............................................................................18, 19

*Quest Nutrition, LLC v. Bd. of Supervisors of LSU Agric. & Mech. Coll.*,
  2014 WL 3362061 (C.D. Cal. July 8, 2014)..............................................................8, 9

*Reckitt Benckiser Pharms., Inc. v. Biodelivery Sciences Int'l, Inc.*,
  2014 U.S. Dist. LEXIS 69805 (E.D.N.C. May 21, 2014).........................................5, 7

*Ross v. Reed*,
  719 F.2d 689 (4th Cir.1983) ........................................................................................5

*Rushing v. Nexpress Sols., Inc.*,
  No. 05-CV-6243 CJS, 2009 WL 104199 (W.D.N.Y. Jan. 14, 2009) .......................16

*Samsung Elecs. Co. v. Rambus, Inc.*,
  398 F. Supp. 2d 470 (E.D. Va. 2005) .........................................................................5, 7

*Station #2, LLC v. Lynch*,
  280 Va. 166, 695 S.E.2d 537 (2010).............................................................................21

*Trident Prod. & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*,
  859 F. Supp. 2d 771 (E.D. Va. 2012), *aff'd*, 505 F. App'x 242 (4th Cir. 2013)...............11, 16

*Valjar, Inc. v. Maritime Terminals, Inc.*,
  220 Va. 1015 (1980) ....................................................................................................19

*Walker Digital, LLC v. Expedia, Inc.*,
  U.S. App. LEXIS 24712 (Fed. Cir. Dec. 30, 2014)....................................................24

*Wells Fargo Equip. Fin., Inc. v. State Farm Fire & Cas. Co.*,
  805 F. Supp. 2d 213 (E.D. Va. 2011) ........................................................................16

## I.      INTRODUCTION

Plaintiff's First Amended Complaint ("FAC") makes sweeping allegations of misappropriation, conversion, breach of contract, and fraud against Virtustream stemming from Virtustream's filing of the '608 application.  Virtustream moves to dismiss the FAC in its entirety for failing to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because, even when viewed in a light most favorable to the nonmovant, the allegations do not pass muster at a threshold level.

Plaintiff's claims for declaratory judgment of inventorship and to correct ownership are moot at least because there is no dispute about inventorship and Virtustream has relinquished its rights as applicant of the '608 application.  Plaintiff's claims for declaratory judgment to correct ownership and conversion of intellectual property are not cognizable causes of action, and therefore must be dismissed.  Plaintiff's claims for misappropriation of invention and conversion of intellectual property also are preempted by Virginia's Uniform Trade Secret Act.  Plaintiff's claims for misappropriation of trade secrets under the VUTSA and the DTSA fail to adequately plead the existence of a trade secret or its misappropriation.  Plaintiff's breach of contract allegation fails to show that a contract ever existed, and thus necessarily could not have been breached.  And Plaintiff's fraud in the inducement allegation fails to plead either actual or constructive fraud, lacks the required particularity to support a fraud claim, and fails to plead that a reasonable person would have been induced under the circumstances of this case.  In short, not one of the claims in the FAC alleges "sufficient factual matter [to] state a claim to relief that is plausible on its face," as required by the Federal Rules.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  Plaintiff's claims therefore should be dismissed.

And while a defective pleading normally would be dismissed without prejudice to the plaintiff repleading his case, that doctrine is cabined by the requirement that Plaintiff *be able* to replead without it being futile.  Where, as here, the pleading is defective and the defect cannot be corrected in a new pleading, dismissal with prejudice is mandated.

## II.  FACTUAL BACKGROUND

David von Vistauxx was offered employment as a Senior SOC Analyst with Defendant Virtustream in May 2015, to begin on June 1, 2015.  *See* D.I. 12-1 at 2-3.   He accepted and was hired as an "at will" employee of Virtustream—"meaning [his] employment may be terminated by the Company with or without cause and with or without notice."  *Id*. at 3.  As a condition of employment, he was required to execute a Proprietary Information and Invention Assignment Agreement ("PIIAA"), which set forth the principles that would govern, among other things, the treatment of intellectual property and company confidential business information during his employment with Virtustream.  *See* D.I. 12-1 at 4-9.

The PIIAA required, in relevant part, that von Vistauxx disclose as "Prior Inventions" a list of all purported inventions that he had conceived, developed or reduced to practice before starting with the Company.  *Id*. at 4, ¶ 2.2.  He listed one patent and other general areas in which he had done prior work, including "All Work/Design in Trans Encryption." (D.I. 12-1 at 9)  Importantly, the PIIAA included an express agreement that von Vistauxx would not incorporate any part of the inventions he listed into his work for Virtustream—if he did, however, then he automatically would grant Virtustream "a non-exclusive perpetual, fully-paid and royalty-free irrevocable and worldwide license" to practice the Prior Inventions.  *Id*.  Likewise, von Vistauxx agreed that he would assign to Virtustream "any and all Inventions . . . made, conceived, reduced

2

to practice or learned . . . during the period of my employment with Virtustream." D.I. 12-1 at 5, ¶ 2.3. He executed the PIIAA on May 15, 2015. *Id*. at 8.

Within two months of his employment with the company, von Vistauxx had prepared a Business Proposal for Virtustream to consider that he called Project ROME. He provided this proposal without requiring a nondisclosure agreement. The proposal itself was incomplete, and von Vistauxx was not even sure that the ideas included in it were patentable. *See* D.I. 12-1 at 11 ("I recognize that the document has flaws and after 4 'Project Overview' there is no data . . . . I do not know if it is patentable at this point . . . ."). Nevertheless, von Vistauxx was actively pitching his idea to the company and apparently growing frustrated that, if they did not license it, he would have to make it publicly available:

> I am a bit miffed that they need yet another then yet another project overview before they can decide if they want to pursue this. I am willing to be more than reasonable on the licensing fees if they want to move forward, ***since at this point my only other option is to open source it***.

*Id*. at 10 (emphasis added).

In December 2015, von Vistauxx first met with Virtustream's outside patent counsel to assist in the preparation of a patent application. D.I. 12-1 at 17. Although he explained that he had reduced his idea to practice on his own time with his own equipment, he was unequivocal that the *conception* had occurred after he started working for Virtustream: "The concept which I designated 'ROME' during my disclosure with Brian ***was conceived during and shortly after my attendance at the inaugural Data Residence meeting in Berlin in June of 2015***." *Id*. at 16 (emphasis added). Von Vistauxx agreed to meet with Virtustream's outside patent counsel in person because his ability to "***share my notebook*** and thoughts" would be "best done in person." *Id*. at 15 (emphasis added).

After conceiving the ROME Project in June 2015; voluntarily disclosing it to Virtustream in July 2015; and then voluntarily meeting with Virtustream's outside patent counsel in December 2015 to work on the '608 patent application—von Vistauxx executed the inventor's Declaration but refused to execute the required assignment to Virtustream.  In response, Virtustream exercised its right to file the '608 Application as putative assignee under 35 U.S.C. § 118.  Von Vistauxx then filed a provisional patent application and assigned the rights in that application to Plaintiff TFOR LLC in September 2016.  D.I. 12-1 at 1.

This lawsuit followed, alleging misappropriation of trade secret, conversion of property, breach of contract, and fraud in the inducement with regard to ROME and Trans Encryption.

## III.   LEGAL STANDARDS

### A.   Subject Matter Jurisdiction

Jurisdiction over a declaratory judgment action must be present "at all stages of review, not merely at the time the complaint is filed." *Janssen Pharmaceutica, N.V. v. Apotex, Inc.*, 540 F.3d 1353, 1360 (Fed. Cir. 2008) (internal citations omitted).  "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed *and that it has continued since*."  *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007) (emphasis added).  For the court to have jurisdiction to issue a declaratory judgment, two conditions must be satisfied: "First, the dispute must be a 'case or controversy' within the confines of Article III of the United States Constitution, the 'constitutional' inquiry. Second, the trial court, in its discretion, must be satisfied that declaratory relief is appropriate, the 'prudential' inquiry." *Carfax, Inc. v. Red Mountain Techs.*, 119 F. Supp. 3d 404, 417 (E.D. Va. 2015) (internal quotations omitted).

An actual controversy becomes moot when there is a "material change in circumstances" that entirely terminates the controversy between the parties.  *See Cardinal Chem. Co. v. Morton*

4

*Int'l, Inc.*, 508 U.S. 83, 98 (1993).  "If intervening factual or legal events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented."  *Ross v. Reed*, 719 F.2d 689, 693–694 (4th Cir.1983).  "The mootness doctrine requires that the plaintiff's controversy remain live throughout the litigation; once the controversy ceases to exist, the court must **dismiss the cause for want of jurisdiction**."  *Samsung Elecs. Co. v. Rambus, Inc.*, 398 F. Supp. 2d 470, 476 (E.D. Va. 2005) (quoting *Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir. 1987)) (emphasis added); *see also City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000); *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–478 (1990).

A sister court in this Circuit recently summarized well the requirements in cases such as the one presently before this Court:

> In patent matters, a dispute presents an actual case or controversy if it is one that is 'definite and concrete, touching the legal relations of parties having adverse legal interests; and it must be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007).  The basis of a court's jurisdiction over a declaratory judgment action is measured at the time of the filing of the complaint, and 'a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.' *Texas v. United States*, 523 U.S. 296, 300 (1998).

*Reckitt Benckiser Pharms., Inc. v. Biodelivery Sciences Int'l, Inc.,* 2014 U.S. Dist. LEXIS 69805, *5 (E.D.N.C. May 21, 2014) (some internal citations omitted).

### B.    Failure to State a Claim

Rule 8 requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  If a complaint fails to satisfy Rule 8, it "must be dismissed" under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).  This standard serves

dual purposes of allowing a party to plead only a plausible claim for relief, while at the same

time not burdening defendants with the time and effort of defending a meritless case, as plead:

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'

*Id.* at 558 (citation omitted).

Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand [ ]

more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at

677-78. Therefore, to survive a motion to dismiss, the complaint "must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* In other

words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S.

at 678.

## IV.   LEGAL ARGUMENT

### A.   The "First Claim" of the First Amended Complaint Presents No Case or Controversy

Plaintiff has requested in his "First Claim" a declaratory judgment that he "was the

applicant and owner of the invention at the time the '608 Application was filed with the USPTO,

and for declaration that the invention is owned by Plaintiff." D.I. 12 at 14. This claim should be

dismissed because Virtustream has relinquished its Applicant status in the '608 application, so

this issue is now moot. But even if it were not moot, dismissal still would be appropriate

because it fails to state a claim.

### 1.     The First Claim is Moot

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) (internal citations omitted).  After the original complaint was filed in this matter and an early resolution could not be reached, in-house counsel for Virtustream told Plaintiff's counsel that it "is not interested in pursuing the patent application further."  2017/01/03 Brown Email to Christofferson (**Exhibit A**).  Thereafter, the undersigned counsel explained that, in furtherance of Virtustream's desire to relinquish control of the pending '608 application, it would abandon the application.  2017/01/24 Davis Email to Thornton and Christofferson (**Exhibit B**).  Virtustream did not abandon it, though, specifically because Plaintiff's counsel objected to that course of action.  2017/01/24 Christofferson Email to Davis (**Exhibit C**).  Consequently, Virtustream filed an amended Application Data Sheet with the Patent Office removing itself as the patent applicant, thereby giving von Vistauxx the ability to prosecute the patent application on his own.  2017/01/25 Davis Ltr to Thornton and Christofferson (**Exhibit D**).

There now exists no substantial controversy between parties having *adverse* legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment. *Rambus, Inc.*, 398 F. Supp. 2d at 476 ("The mootness doctrine requires that the plaintiff's controversy remain live throughout the litigation; once the controversy ceases to exist, the court must **dismiss the cause for want of jurisdiction**.") (emphasis added).

Plaintiff contends that there remains a live dispute as to the scope of its ownership rights vis-à-vis those of Virtustream.  But this dispute is insufficiently concrete to warrant the exercise of this Court's jurisdiction.  *See Reckitt Benckiser Pharms., Inc. v. Biodelivery Sciences Int'l, Inc.,* 2014 U.S. Dist. LEXIS 69805, *5 (E.D.N.C. May 21, 2014); *see also, Faryniarz v.*

*Ramirez*, 2015 U.S. Dist. LEXIS 151472, *55-56 (D. Conn. Nov. 9, 2015).  If von Vistauxx prosecutes the patent application and claims only subject matter that is rightfully his under the PIIAA, there will be no dispute as to ownership.  Further, he may claim subject matter whose ownership Virtustream has no interest in contesting.  But without knowing the subject matter to be claimed by von Vistauxx, there is no concrete controversy for this court to adjudicate.[1] Accordingly, the "First Claim" in Plaintiff's First Amended Complaint is moot and must be dismissed for lack of subject matter jurisdiction.

### 2.    The First Claim Also Fails to State a Claim

Plaintiff seeks to be substituted as "applicant" and owner of the '608 Application, *see* FAC ¶¶ 52-54, apparently pursuant to 35 U.S.C. § 256.[2]  Plaintiff fails to state a claim under Section 256 for two reasons.

*First*, Section 256 is directed to corrections of a named <u>inventor</u>, not to corrections of a named <u>applicant</u>, and thus is not applicable to this case. Indeed, the FAC appears to recognize that the inventorship issue is not disputed.  *See* FAC, ¶ 40 (acknowledging von Vistauxx was correctly listed as inventor).  *Second*, Section 256 "creates a cause of action in the district courts

---

[1] Further, while Virtustream flatly disagrees with Plaintiff's contention that the company "willfully and wrongfully represented to the USPTO" that Virtustream owned the patent, that is not an independent cause of action that otherwise can confer declaratory judgment jurisdiction on this court.  *See Nike, Inc.*, 133 S. Ct. at 727 (mootness lies "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit.").

[2] Virtustream recognizes that the FAC contains a string cite of sections from the Patent Statute and Code of Federal Regulations purporting to support the "First Claim."  However, Plaintiff has not cited (and Virtustream is not aware of) any statute other than 35 U.S.C. § 256 that even arguably could support a declaratory judgment action here.  *See HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co,* 600 F.3d 1347, 1353 (Fed. Cir. 2010) (holding that 35 U.S.C. § 116 "does not provide a private right of action to challenge inventorship of a pending patent application"); *Quest Nutrition, LLC v. Bd. of Supervisors of LSU Agric. & Mech. Coll.*, No. CV 14-02005 SJO EX, 2014 WL 3362061, at *4 (C.D. Cal. July 8, 2014) (holding that because the district court is precluded from granting Plaintiff a declaratory judgment correcting a pending patent application pursuant to 35 U.S.C. § 118, Plaintiff failed to state a claim).

only to modify inventorship on *issued* patents," and not on pending patent applications. *Administrators of the Tulane Educ. Fund v. Ipsen Pharma, S.A.S.*, 771 F. Supp. 2d 32, 37 (D.D.C. 2011) (quoting *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1357 n. 1 (Fed. Cir. 2004)) (emphasis added); *see also Quest Nutrition,* 2014 WL 3362061, at *4.  An entirely separate section of the statute provides for correction of inventorship on patent applications. *Compare* 35 U.S.C. § 256 ("Whenever through error a person is named in *an issued patent* as the inventor, or through error an inventor is not named *in an issued patent* and such error arose without any deceptive intention on his part ...") (emphases added), *with* 35 U.S.C. § 116 ("Whenever through error a person is named *in an application for patent* as the inventor, or through error an inventor is not named *in an application*, and such error arose without any deceptive intention on his part ...") (emphases added).

However, like in *Quest Nutrition*, Plaintiff here does not argue that it is appropriate to proceed before the Court under § 116, and instead claims it is also entitled to relief under 35 U.S.C. § 256 and 35 U.S.C. § 118.  *See Quest Nutrition*, 2014 WL 3362061, at *4 ("Plaintiff does not argue that it is appropriate to proceed before the Court under § 116 . . . Instead, Plaintiff argues that it is entitled to relief under 35 U.S.C. § 118.").  Section 118 states that "[i]f the Director grants a patent on an application filed under this section by a person other than the inventor, the patent shall be granted to the real party in interest and upon such notice to the inventor as the Director considers to be sufficient."  In *Quest Nutrition*, the court held that "§ 118 only grants the *Director* of the [PTO] the authority to take certain actions and plainly does not create a cause of action in the district courts to modify inventorship on *pending patent applications*."  *Id.* (internal citations omitted, and emphases added).  This logic applies equally to a modification of applicant status on a pending patent application.

Thus, Plaintiff has not stated a claim as to the '608 application. *See Ipsen Pharma*, 771 F. Supp. 2d at 38 (finding Plaintiff had failed to state a claim pursuant to 35 U.S.C. § 256 for all U.S. patent applications); *Faryniarz*, 2015 U.S. Dist. LEXIS 151472 at *55-56. Accordingly, even if the Court concludes that this Claim is not moot, it still must be dismissed for failing to state a claim.

## B.     Plaintiff Fails to State a Claim for Misappropriation of Invention

The "Second Claim" in the FAC essentially mirrors the First Claim, insofar as it appears to rest entirely on Virtustream's filing the '608 application. *See, e.g.*, FAC at ¶55 ("Defendant did not invent Trans Encryption and did not develop the claims in the '608 application…."); *id.* at ¶ 56 ("Trans Encryption as described and claimed in the '608 application was invented, tested, and ready to be patented before DvV was employed by Defendant …."); *id.* at ¶ 62 ("Defendant filed the '608 application with the USPTO falsely indicating that it was the applicant and therefore presumptive owner . . . ."). Plaintiff's "misappropriation of invention" claim thus should be dismissed for the same reasons discussed in Section IV.A.1, *supra*.

Even if the Second Claim was viable, the Federal Circuit has stated that, where a defendant arguably has misappropriated an invention, the plaintiff "would have an appropriate remedy in state court for misappropriation of trade secret." *Evans Cooling Sys., Inc. v. Gen. Motors Corp.*, 125 F.3d 1448, 1454 (Fed. Cir. 1997); *accord*, *Delano Farms Co. v. California Table Grape Comm'n*, 940 F. Supp. 2d 1229, 1241 (E.D. Cal. 2013) (where plaintiff alleges misappropriation of invention, they would have an appropriate remedy in state court for misappropriation of trade secret). In fact, that would have to be the remedy here (if one existed) because the Virginia Uniform Trade Secrets Act (the "VUTSA") "preempts alternative claims that are 'premised entirely on a claim for the misappropriation of a trade secret.'" *Afilias PLC v.*

*Architelos, Inc.*, No. 1:15-CV-14 (LMB/JFA), 2016 WL 1245006, at *9 (E.D. Va. Mar. 23, 2016) (quoting *Smithfield Ham & Products Co., Inc. v. Portion Pac, Inc.*, 905 F. Supp. 346, 348 (E.D. Va. 1995)).

According to this Court, "[t]he VUTSA preemption provision is intended to prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret." *Trident Prod. & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F. Supp. 2d 771, 782 (E.D. Va. 2012), *aff'd*, 505 F. App'x 242 (4th Cir. 2013) (internal quotations omitted).  Accordingly, "only those distinct theories of relief that are supported by facts ***unrelated to the misappropriation of the trade secret*** may escape preemption under the VUTSA." *Id.* (internal quotations omitted and emphasis added).

Plaintiff's claim for "misappropriation of invention" is entirely predicated on the alleged misappropriation of the Trans Encryption technology embodied in the '608 application.  *See* FAC at ¶¶ 55-63.  According to Plaintiff, "[t]he description and claims that constitute the invention ***Trans Encryption*** . . . constitute information that ***is and presently remains a trade secret***." *Id.* at ¶ 64 (emphases added).[3]  Where, as here, Plaintiff's claim for misappropriation of invention is predicated entirely upon Virtustream's alleged misappropriation of trade secrets, that claim is preempted by the VUTSA.  *See Trident Prods. & Servs.*, 859 F. Supp. 2d at 782 (citing *E.I. DuPont v. Kolon Industries*, 688 F.Supp.2d 443, 452 (E.D. Va. 2009)); *see also MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1364 (Fed. Cir. 2005) (district court

---

[3] While Virtustream rejects Plaintiff's characterization of Trans Encryption as a "trade secret," *see* Sections IV.C and IV.E, *infra*, it is clear that Plaintiff here is doing what the VUTSA explicitly sought to prevent—presenting inconsistent theories of relief for the same underlying harm (the alleged misappropriation of an alleged trade secret).  *See Trident Prods. & Servs.*, 859 F. Supp. 2d at 782.

properly applied the preemption clause because "[the plaintiff] set forth two theories that both depend upon the misappropriation of a trade secret, not a misappropriation theory and an independent and alternative conspiracy theory.").

As Plaintiff's claim for misappropriation of the invention Trans Encryption is nothing more than a restatement of its claim for misappropriation of the alleged trade secret Trans Encryption under the VUTSA, Plaintiff's Second Claim is preempted and must be dismissed for failure to state a claim upon which relief can be granted.

### C.  Plaintiff Fails to State a Claim for Misappropriation of Trade Secret

Plaintiff's Third Claim for "misappropriation of trade secret" also should be dismissed for failure to state a claim upon which relief can be granted.  The facts as alleged in Plaintiff's First Amended Complaint show that Trans Encryption and the ROME business proposal do not meet the elements required to satisfy a claim of "misappropriation of trade secret" under the Virginia Uniform Trade Secrets Act.

To establish a claim under the Virginia Uniform Trade Secrets Act, "a plaintiff must prove that (1) the information in question constitutes a trade secret, and (2) the defendant misappropriated it."  *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 422 (E.D. Va. 2011) (citing *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 331 F. Supp. 2d 396, 416 (E.D. Va. 2004)).  The VUTSA defines a "trade secret" as:

> [I]nformation, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> 2. Is subject to efforts that are **reasonable under the circumstances to maintain its secrecy**.

Va. Code § 59.1–336 (emphasis added); *see also MicroStrategy, Inc.*, 331 F. Supp. 2d at 416.
Additionally, the VUTSA defines "misappropriation" as either "1. Acquisition of a trade secret
of another by a person who knows or has reason to know that the trade secret *was acquired by
improper means*," or "2. Disclosure or use of a trade secret of another without express or implied
consent by a person who (a) *used improper means* to acquire knowledge of the trade secret." Va.
Code. § 59.1–336 (emphases added). Under this Act, "improper means" is defined as "theft,
bribery, misrepresentation, use of a computer or computer network without authority, breach of a
duty or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or
other means." *Id*.

Plaintiff admits that von Vistauxx "offered to share '[his] notebook and thoughts' with
Patent Attorney," FAC ¶ 38, and worked with Virtustream's outside patent counsel to complete
the '608 Application "in accordance with the Trans Encryption technology disclosed in the
Notebook" from December 3-31, 2015. *Id.* at ¶ 39. Plaintiff further stated that the inventor had
numerous discussions by email and telephone concerning Trans Encryption with Virtustream
during December 2015 and early 2016. *Id.* at ¶ 42. All of this was done without a nondisclosure
or confidentiality agreement, undermining the notion that the inventor took reasonable steps to
maintain secrecy. *See MicroStrategy, Inc.*, 331 F. Supp. 2d at 416; *cf. Informatics Applications
Grp.*, 836 F. Supp. 2d at 422 (finding misappropriation of a trade secret where employee had
signed a confidentiality agreement).

Similarly, the ROME business proposal does not meet the VUTSA's definition of a trade
secret. As Plaintiff acknowledges, von Vistauxx voluntarily produced a one-page summary of
the business proposal to Virtustream between June 22 and early July 2015. FAC ¶ 28. Further,
in July, the inventor "also drafted a longer document setting out the business case, laying out the

13

proposal in detail," *id.*, all without requiring a nondisclosure or confidentiality agreement.  This demonstrates, as with Trans Encryption, that the inventor did not undertake reasonable efforts to maintain the ROME business proposal's secrecy.

Additionally, neither Trans Encryption nor ROME was *misappropriated*.  Plaintiff's misappropriation claim with respect to both Trans Encryption and ROME is premised on an alleged using of improper means to acquire knowledge of the trade secret.[4]  *See* FAC ¶¶ 67-68.  As Plaintiff acknowledges, von Vistauxx freely outlined to his company supervisor the ROME business proposal and his proposed terms for engaging Virtustream.  *See* FAC ¶ 26 (explaining that "DvV told Fennimore that his prior Trans Encryption invention could be used to resolve DR").  Plaintiff further alleges that von Vistauxx "drafted a longer document setting out the business case . . . written by DvV on his own time, on his own equipment, in his own personal office."  *Id.*  Thus, as Virtustream acquired knowledge of the alleged "trade secret" through the course of ordinary business negotiations, it is implausible for Plaintiff to argue that Virtustream acquired knowledge of the alleged "trade secret" through improper means.

Further, as discussed, *supra*, Plaintiff acknowledges that von Vistauxx learned and conceived of Trans Encryptions applicability to Data Residency issues during his employment with Virtustream.  *See* FAC ¶¶ 23, 36, Ex. 5 ("[E]ach time I work on it, I discover new implications of the underlining technology.").  Plaintiff also acknowledges that von Vistauxx drafted the ROME concept during his employment with Virtustream.  *See id.* at ¶ 28.  Further, Plaintiff acknowledges that von Vistauxx reduced the "ROME" concept to practice during his employment with Virtustream, *see id.* at ¶¶ 24, 36, and that he expected "to continue to identify

---

[4] The tort of misappropriation requires either acquisition by improper means, or an unauthorized use or disclosure.  Plaintiff has not alleged in the FAC that Virtustream has made an unauthorized use or disclosure of the information alleged to be a trade secret.

new claims for a considerable period as a result of listening to clients and discussions," *see id.* at Ex. 5.  By executing the PIIAA, von Vistauxx assigned and agreed to assign in the future to Virtustream all his "right, title, and interest in and to any and all Inventions (and all Intellectual Property Rights with respect thereto) made, ***conceived, reduced to practice, or learned*** by [him], either alone or with others, ***during the period of [his] employment*** by [Virtustream]."  *See* D.I. 12-1 (PIIAA) at § 2.3 (emphasis added).

Thus, not only was the ROME business proposal not acquired through improper means, von Vistauxx was under an obligation to assign any intellectual property rights surrounding the ROME business proposal to Virtustream under the terms of the PIIAA.  *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 206, 788 S.E.2d 237, 260 (2016) ("There can be no misappropriation where acquisition, disclosure, and use of a trade secret have been expressly authorized by contract.").

For the reasons discussed above, Trans Encryption and the ROME business proposal cannot be trade secrets as defined by the VUTSA, and knowledge of Trans Encryption and the ROME business proposal was not acquired through improper means.  Accordingly, these allegations fail to state a claim and must be dismissed.

### D.     Plaintiff Fails to State a Claim for Conversion of Property

In Virginia, a party bringing a claim for conversion must allege the ownership or right to possession of the property at the time of the conversion and wrongful exercise of dominion or control over the plaintiff's property, thus depriving plaintiff of possession.  *See E. W., LLC v. Rahman*, 873 F. Supp. 2d 721, 731 (E.D. Va. 2012) (citing *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 664 (E.D. Va. 2001); *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 75, 92 S.E.2d 359 (Va. 1956)). The tort of conversion generally applies only to tangible property, but in some limited cases may apply to intangible property.  *See id.* (citing *E.I.*

15

*DuPont de Nemours & Co. v. Kolon Indus., Inc.*, No. 3:09cv58, 2011 WL 4625760, at *3–5 (E.D. Va. Oct. 3, 2011)); *see also Wells Fargo Equip. Fin., Inc. v. State Farm Fire & Cas. Co.*, 805 F. Supp. 2d 213, 221 (E.D. Va. 2011) ("[t]he tort of conversion may lie where intangible property rights alleged to have been converted "***arise from or are merged with a document***, such as a . . . promissory note, or bond.") (emphasis added).  However, where Plaintiff alleges that a defendant, as here, converted a patentable idea, and not a tangible expression of that idea, it must be dismissed for failure to state a claim.  *See, e.g.*, *Rushing v. Nexpress Sols., Inc.*, No. 05-CV-6243 CJS, 2009 WL 104199, at *6 (W.D.N.Y. Jan. 14, 2009).

Thus, Plaintiff's claim that "Defendant has converted the subject matter of the negotiation between DvV and Defendant, the description of the invention Trans Encryption and the description of the ROME business proposal that was to make use of the Trans Encryption invention, to its own use and has thereby deprived Plaintiff of the use of its own [intellectual] property by improper means," FAC ¶ 72, must be dismissed for failing to state a claim upon which relief can be granted.

Even if this Court finds that the aforementioned intellectual property is sufficiently tangible for a claim of conversion to lie, Plaintiff's "Fourth Claim" still must be dismissed as being preempted by the VUTSA because "only those distinct theories of relief that are supported by facts unrelated to the misappropriation of the trade secret may escape preemption under the VUTSA." *Trident Prod. & Servs.*, 859 F. Supp. 2d at 782.  Here, Plaintiff's claim of conversion is entirely predicated on an alleged acquisition by improper means (misappropriation) of Trans Encryption and the ROME business proposal.  *See, e.g.*, FAC at ¶ 71.  As previously mentioned, Plaintiff readily admits that it believes "[t]he description and claims that constitute the invention Trans Encryption and the description of the ROME business proposal constitute information that

is and presently remains a trade secret."  FAC at ¶ 64.  Thus, like its claim for misappropriation

of invention, Plaintiff's Fourth Claim appears to be yet another restatement of its claim for

misappropriation of the alleged trade secrets Trans Encryption and the ROME business proposal

under the VUTSA, and is therefore preempted.  *See Afilias*, No. 1:15-CV-14 (LMB/JFA), 2016

WL 1245006, at *9-10 (finding claims for conversion were preempted by the VUTSA because

they "were likely premised on the trade secret misappropriation allegations and were intended to

serve as a backstop for those allegations").  Accordingly, this claim must be dismissed.

> ### E.   Plaintiff Fails to State a Claim for Misappropriation of Trade Secret Under
> 18 U.S.C. § 1836(b)(c) and §1839(3), (4) and (5)

In addition to Plaintiff's claim of misappropriation of trade secret under state law, it

alleges trade secret misappropriation against Virtustream under the federal Defend Trade Secrets

Act of 2016 (the "DTSA") ("Fifth Claim").  The DTSA creates a private cause of action for the

owner of a trade secret "if the trade secret is related to a product or service used in, or intended

for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1); *see also Hydrogen Master

Rights, Ltd. v. Weston*, No. CV 16-474-RGA, 2017 WL 78582 at *10 (D. Del. Jan. 9, 2017).

Here, the FAC fails to allege any nexus between interstate or foreign commerce and Trans

Encryption or the ROME business proposal.  *See Hydrogen Master Rights*, 2017 WL 78582 at

*10 (dismissing claim for trade secret misappropriation under the DTSA where complaint failed

to allege any nexus between interstate or foreign commerce and the alleged trade secret).

In addition, "the DTSA, by its own terms, applies only to an act of misappropriation that

'occurs on or after the date of the enactment of this Act.'"  *Id.* (citing Pub. L. No. 114–153, §

2(e)).  "The DTSA became effective on May 11, 2016.  Thus, a plaintiff states a plausible claim

for relief only if it 'sufficiently alleges a prohibited 'act' occurring after May 11, 2016.'"  *Id.*

Here, the FAC does not allege any acts on or after May 11, 2016 other than a conclusory

allegation of continuing misappropriation. *See, e.g.,* FAC ¶ 81 ("Defendant continued with its improper activities to misappropriate the trade secrets of Plaintiff on and after 11 May 2016, and, on information and belief, continues to do so as of the filing of this Complaint."). For this reason, the Fifth Claim to Plaintiff's FAC must be dismissed for failure to state a claim.[5]

### F. Plaintiff Fails to State a Claim for Breach of Contract and/or Breach of Constructive Trust

#### 1. Breach of Contract

To prove a breach of a contract, a plaintiff must first prove that a valid contract existed: *i.e.*, that there was a complete agreement in the form of an offer and acceptance of that offer for valuable consideration. *See Dean v. Morris*, 287 Va. 531, 536, 756 S.E.2d 430, 432–33 (2014). Another essential element of a valid contract is certainty and completeness—the element of completeness denotes that the contract embraces all the material terms. *See id.*, 287 Va. at 537, 756 S.E.2d at 433. Plaintiff's breach of contract claim ("Sixth Claim") must be dismissed for failure to state a claim because the parties never entered into a contract in the first place, and thus *a fortiori* there could be no breach.

"It is elementary that mutuality of assent—the meeting of the minds of the parties—is an essential element of all contracts." *Phillips v. Mazyck*, 273 Va. 630, 636, 643 S.E.2d 172, 175 (2007) (internal citations omitted). "Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent and, therefore, no contract." *Id.* (citing *Persinger & Co. v. Larrowe*, 252 Va. 404, 408, 477 S.E.2d 506, 509 (1996)); *Valjar, Inc.*

---

[5] Nevertheless, even if this Court finds Plaintiff's conclusory allegation of continuing use is enough to sufficiently allege a prohibited act occurring after May 11, 2016, for the reasons discussed above in Section IV.C., *supra*, Trans Encryption and the ROME business proposal are not "trade secrets" as defined by the DTSA, and knowledge of Trans Encryption and the ROME business proposal was not acquired through improper means and was thus not misappropriated as required by the DTSA.

*v. Maritime Terminals, Inc.*, 220 Va. 1015, 1018 (1980) ("A contract cannot exist if the parties never mutually assented to terms proposed by either.").

Plaintiff alleges that Virtustream accepted the ROME business proposal by going forward with the patent application.  However, as Plaintiff notes, in an oral discussion in December 2015 between Daniel McLoughlin and von Vistauxx, "McLoughlin asserted that what DvV had done prior to employment belonged to DvV but what DvV had done after employment belonged to Defendant."  FAC ¶ 37.  Plaintiff states that "[o]n information and belief [Daniel] McLoughlin was acting on behalf of Defendant when he requested the disclosure from DvV, when he received the emails set out in Exhibit 5, and when he acted in filing the '608 Application."  *Id.* at ¶ 36.  Given Plaintiff's acknowledgement that the attorney acting on behalf of Virtustream believed (correctly) that the work performed by von Vistauxx during his employment, including the ROME business proposal, already belonged to Virtustream, a contract never could have existed.  *See Valjar*, 220 Va. at 1018 ("A contract cannot exist if the parties never mutually assented to terms proposed by either.").

Plaintiff's FAC explicitly acknowledges the lack of any contract or meeting of the minds. *See* FAC ¶ 42 ("DvV explicitly stated in his further discussions with Defendant that he was not assigning anything concerning Trans Encryption without compensation and an ***executed written contract following through on his ROME business proposal***.") (emphasis added).  In fact, Plaintiff acknowledges no compensation structure had even been negotiated.  *Id.*  The lack of a meeting of the minds is further illustrated by Daniel McLoughlin's March 2016 email message to Plaintiff's counsel:

> Under David von Vistauxx's PIIAA, which you attach to the below email message, Virtustream owns the rights in and to inventions that Mr. von Vistauxx creates while he is a Virtustream employee, including inventions Mr. von Vistauxx creates during his employment in the areas listed in Exhibit A of the PIIAA. To this end,

19

under the PIIAA, Mr. von Vistauxx is required to execute an assignment of a patent application that Virtustream filed recently at the USPTO, for which Mr. von Vistauxx is an inventor. The patent application is directed to an invention he made during his employment. We have provided Mr. von Vistauxx the assignment on several occasions, and asked him to execute it, but he has refused.

D.I. 12-1 at 24. The FAC itself thus demonstrates that Virtustream filed the '608 application in the belief that von Vistauxx was under an obligation to assign his rights to the invention and that the filing of the '608 application was not an acceptance of the ROME business proposal.

Accordingly, Plaintiff's breach of contract claim must be dismissed for failure to state a claim as the parties never entered into a contract, written or otherwise.

### 2. Breach of Constructive Trust

"A constructive trust is a mechanism by which the person holding title to property is subjected to an equitable duty to convey the property to another because allowing the title holder to retain the property would be unjust." *Buchanan v. Buchanan*, 266 Va. 207, 214, 585 S.E.2d 533, 537 (2003) (citation omitted). "The constructive trust arises by operation of law and is independent of the intention of the parties. In an action in which a constructive trust is imposed, the original transfer is not declared void; rather the title holder is ordered to transfer title of the property to or for the benefit of another." *Id.* (internal citations omitted).

As discussed above, to survive a motion to dismiss, the FAC "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 677-78 (internal citations omitted). However, Plaintiff here makes only the conclusory allegation that "Defendant is under a constructive trust to preserve this agreement pending finalization of terms." FAC ¶ 85. This claim of breach of constructive trust is merely a legal conclusion absent facts, and should therefore be dismissed for failure to state a claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

### G.      Plaintiff Fails to State a Claim for Fraud in the Inducement

"[A]n action based upon fraud must aver the misrepresentation of present pre-existing facts, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." *Abi-Najm v. Concord Condo.*, LLC, 280 Va. 350, 362, 699 S.E.2d 483, 490 (2010).  In general, "if a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud." *Station #2, LLC v. Lynch*, 280 Va. 166, 172, 695 S.E.2d 537, 540 (2010) (citing *SuperValu, Inc. v. Johnson*, 276 Va. 356, 368, 666 S.E.2d 335, 342 (2008)).  Additionally, "[a] finding of ... constructive fraud requires clear and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation." *Mortarino v. Consultant Eng'g Servs., Inc.*, 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996).  As required by FED R. CIV. P. 9(b), fraud must be plead with particularity—laying out the who, what, when, where and how of the allegedly fraudulent action.  *See Harrison v. Westinghouse Savannah River Co*., 176 F.3d 776, 783-84 (4th Cir. 1999); *Asghari-Kamrani v. United Servs. Auto. Ass'n*, 2016 U.S. Dist. LEXIS 170929, *12 (E.D. Va. Dec. 9, 2016).

Here, Plaintiff does not allege that Virtustream made a promise to enter into the ROME business proposal at all.  Instead, Plaintiff asserts that Virtustream induced von Vistauxx to provide details of the invention Trans Encryption and the business plan ROME by knowingly and falsely representing by its conduct that it had accepted the business proposal.  *See* FAC ¶ 90.  Plaintiff's FAC fails to state whether it believes Virtustream committed an actual or a constructive fraud and instead merely makes conclusory allegations that Virtustream knowingly and falsely represented information, and that Virtustream's "actions and conduct was malicious,

21

fraudulent, oppressive, and recklessly committed with wanton disregard of Plaintiff's rights." FAC ¶¶ 90, 96.

*First*, Plaintiff's argument that Virtustream fraudulently induced von Vistauxx to provide details of the business plan ROME is internally inconsistent. *See* FAC ¶ 90.  As noted in the FAC, "DvV outlined the business proposal and his proposed terms for engaging Defendant in this project to his supervisor." *Id.* at ¶ 26.  He was then asked by his supervisor "to prepare a one-page summary of the business proposal, which DvV gave the name 'ROME.'" *Id.* at ¶ 28. Plaintiff further notes that "[i]n July [DvV] also drafted a longer document setting out the business case, laying out the proposal in detail." *Id.*  Plaintiff's argument is circular.

In alleging that Virtustream induced von Vistauxx to provide the details of ROME through an alleged acceptance of ROME, Plaintiff's argument becomes self-defeating, by implicitly admitting that Virtustream had already been provided details of the business plan ROME by von Vistauxx through legitimate means, prior to any alleged inducement.  Virtustream could not have induced the provision of details of the ROME business plan by accepting the plan, of which it had already been provided the details.

*Second*, as discussed above, given Plaintiff's acknowledgement that the attorney acting on behalf of Virtustream believed that von Vistauxx's work performed during his employment, including the ROME business proposal, already belonged to Virtustream, FAC ¶ 37, he could not have reasonably believed the parties had entered into a binding contract concerning the ROME business proposal.  FAC ¶ 90; *see also Mortarino*, 251 Va. at 295 (stating constructive fraud requires clear and convincing evidence that one has represented as true what is really false, in such a way as to *induce a reasonable person to believe it*.

22

The FAC explicitly acknowledges the lack of any written contract or meeting of the minds regarding the ROME business proposal.  *See* FAC ¶ 42 ("DvV explicitly stated in his further discussions with Defendant that he was not assigning anything concerning Trans Encryption without compensation and ***an executed written contract following through on his ROME business proposal***.") (emphasis added).  In fact, Plaintiff acknowledges no compensation structure had even been negotiated.  *Id.*  Nevertheless, without a written contract, von Vistauxx continued to work "with Defendant's Patent Attorney to complete a patent application for 'Removing Information from Data' in accordance with the Trans Encryption technology."  *See id.* at ¶ 39.

There is no allegation in the FAC that Virtustream made a misrepresentation of present, pre-existing material facts concerning the acceptance of the ROME business proposal.  *See Abi-Najm*, 280 Va. at 362.  While Plaintiff claims Virtustream appeared to show interest in the ROME business plan, FAC ¶ 34, Plaintiff has not shown that any agreement was ever reached concerning the plan before von Vistauxx began assisting in the preparation the '608 application.  Therefore, Plaintiff has not alleged a plausible claim that Virtustream committed a fraud by inducement.  *See Mortarino*, 251 Va. at 295 ("[A] cause of action for constructive fraud are a showing by clear and convincing evidence that a ***false representation of a material fact*** was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation.") (emphasis added).

Accordingly, Plaintiff's claim of "fraud in the inducement" either through actual or constructive fraud, must be dismissed for failure to state a claim.

**H.**     **Dismissal With Prejudice Is Appropriate Because Plaintiff Cannot Adequately Cure Its Pleading Defects**

"[A]lthough district courts ordinarily give a plaintiff leave to amend at least once before dismissing a case with prejudice, when 'it is clear that the defect ***cannot be corrected*** so that amendment is futile,' the district court need not grant leave for the plaintiff to file an amended complaint." *Davis v. MRS BPO, LLC*, No. 15 C 2303, 2015 WL 4326900, at *3 (N.D. Ill. July 15, 2015) (emphasis added) (citing *Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015)); *accord Walker Digital, LLC v. Expedia, Inc.*, U.S. App. LEXIS 24712 (Fed. Cir. Dec. 30, 2014); *see also Hernandez v. Wells Fargo Home Mortg.*, No. 2:15-CV-1043-GMN-VCF, 2016 WL 183478, at *2 (D. Nev. Jan. 14, 2016) (holding that where deficiencies in a claim cannot be corrected, the dismissal will be with prejudice). Here, the record supports dismissal with prejudice.

The claim for declaratory judgment of ownership and for conversion cannot be replead because this court lacks declaratory judgment jurisdiction over those claims. Similarly, the claims for declaratory judgment to correct ownership and conversion of intellectual property cannot be replead because they are not cognizable causes of action, and therefore the court lacks subject matter jurisdiction to hear them. Further, the claims for misappropriation of invention and conversion of intellectual property cannot be replead because they are preempted by the VUTSA. While under *some* circumstances a claim for misappropriation of trade secrets under the VUTSA and the DTSA could be replead, the opportunity to replead *here* would be futile given the FAC shows von Vistauxx voluntarily disclosed alleged trade secret without any reasonable expectation that secrecy would be maintained. Plaintiff's breach of contract allegation fails to show that a contract ever existed (and thus necessarily could not have been

24

breached), and in fact expressly alleges that there was no meeting of the minds.  Finally, the defective fraud-in-the-inducement claim cannot be cured because Plaintiff cannot plausibly plead that Virtustream made a promise or that von Vistauxx relied on any supposed promise.

## V.   CONCLUSION

The allegations in the FAC are without merit and none of them, even if true, states a plausible claim for relief.  As a result, this Court should dismiss with prejudice Plaintiff's FAC in its entirety for failure to state a claim upon which relief can be granted.

Respectfully submitted,

**FISH & RICHARDSON P.C.**

Dated: February 1, 2017

By:  _/s/ Ahmed J. Davis_
Ahmed J. Davis (Va. Bar No. 43982)
adavis@fr.com
Jared M. Hartzman (Va. Bar No. 89234)
hartzman@fr.com
FISH & RICHARDSON P.C.
1425 K Street, N.W., Suite 1100
Washington, DC 20005
Phone: (202) 783-5070

Adam J. Kessel (admitted _pro hac vice_)
kessel@fr.com
FISH & RICHARDSON, P.C.
One Marina Park Drive
Boston, MA 02110-1878
Phone: (617) 542-5070

Thomas A. Brown (admitted _pro hac vice_)
tom.brown@dell.com
Dell Inc.
176 South Street
Hopkinton, MA 01748
Phone: (508) 435-1000

_Counsel for Defendant Virtustream, Inc._

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

DEFENDANT VIRTUSTREAM INC.'S MEMORANDUM OF LAW IN SUPPORT OF

MOTION TO DISMISS TFOR LLC'S FIRST AMENDED COMPLAINT has been filed with

the Court's ECF systems, and thereby served all parties and counsel designated to receive such

notices, on February 1, 2017.

*/s/ Ahmed J. Davis*

Ahmed J. Davis (Va. Bar No. 43982)
adavis@fr.com
**FISH & RICHARDSON P.C.**
1425 K Street, N.W., Suite 1100
Washington, DC 20005
Phone: (202) 783-5070
Fax: (202) 783-2331
