IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



FILED

JUN 2 2 2017

CLERK, US DISTRICT COURT
NORFOLK, VA

TFOR LLC,

     **Plaintiff,**

     v.

                          **CIVIL NO. 2:16-cv-602**

VIRTUSTREAM, INC.,

     **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Virtustream, Inc.'s ("Defendant") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss"). ECF No. 13. For the reasons stated herein, Defendant's Motion to Dismiss the Amended Complaint is **GRANTED IN PART** and **DENIED IN PART**.

### I.    PROCEDURAL BACKGROUND

On October 7, 2016, TFOR LLC ("Plaintiff") filed the complaint against Defendant. ECF No. 1. On January 18, 2017, Plaintiff filed the First Amended Complaint ("FAC"), which is at issue here. ECF No. 12. The FAC asserts the following seven claims: (1) declaratory judgment; (2) misappropriation of invention; (3) misappropriation of trade secret; (4) conversion; (5) misappropriation of trade secret in violation of 18 U.S.C. § 1836; (5) breach of contract and/or breach of constructive trust; and (6) fraud in the inducement. Id. On February 1, 2017, Defendant filed the instant Motion to Dismiss and supporting memorandum ("Def. Mem.") seeking dismissal of all seven claims in the FAC. ECF Nos. 16, 17. On February 15, 2017, Plaintiff filed a Brief in Response to Defendant's Motion to Dismiss ("Pl. Resp."). ECF No. 18. On February 21, 2017, Defendant filed a Reply Memorandum ("Def. Reply"). ECF No. 20.

On that same day, Plaintiff filed a Motion for Leave to File a Supplemental Brief ("Pl. Suppl. Br. I") on the grounds that, after filing its response brief on February 15, 2017, Plaintiff reportedly discovered that a key factual representation made by Defendant in the briefing was inaccurate. ECF No. 21. On February 24, 2017, the Court granted Plaintiff's motion for leave to file. On March 1, 2017, Defendant filed a brief in opposition to Plaintiff's Supplemental Brief. ECF No. 23. With leave of the Court, Plaintiff then filed a response to Defendant's opposition brief on March 6, 2017. ECF Nos. 24, 25. Defendant filed a rebuttal on March 7, 2017. ECF No. 26. On March 13, 2017, Plaintiff filed a second motion for leave to file an additional responsive brief, which was denied by the Court on April 3, 2017. ECF Nos. 27, 29.

On May 23, 2017, in anticipation of the hearing on Defendant's Motion to Dismiss, the Court ordered the parties each to submit a one-page status report on the patent application, Serial No. 15/008,608, which is discussed in the parties' briefing. On May 30, 2017, in accordance with this Order, the parties submitted their respective status reports. ECF No. 32 (Plaintiff's) and ECF No. 33 (Defendant's). On June 1, 2017, the parties appeared before the Court and presented oral argument on Defendant's Motion to Dismiss. See ECF No. 34. During this hearing, the Court instructed Plaintiff to submit additional legal support, if any, for the FAC's Seventh Claim (Fraud in the Inducement). On June 5, 2017, pursuant to this instruction and with Defendant's consent, Plaintiff filed a supplemental brief to address the assignability of fraud claims under Virginia law ("Pl. Suppl. Br. II").[1] ECF No. 35. On June 9, 2017, Defendant filed a response in opposition to Plaintiff's supplemental brief ("Def. Supp. Resp. II"). ECF No. 38. Defendant's Motion to Dismiss is now ripe for decision by this Court.

---

[1] Plaintiff also included additional arguments in defense of its breach of contract claim contained in the FAC's Sixth Claim. ECF No. 35 at 4–5.

## II.    FACTUAL BACKGROUND

On a motion to dismiss for failure to state a claim, the Court accepts the plaintiff's properly pleaded factual allegations as true. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A summary of the facts alleged in Plaintiff's First Amended Complaint follows.

### Trans Encryption

In 2004, David von Vistauxx ("DvV") began developing an idea for encryption software, which was designed to take "digitized intelligible information and divid[e] that information into randomized strings of data none of which contain any information." FAC ¶ 9. Unlike prior art, the invention "can reassemble [the data] without having to make intermediate reassembles." Id. DvV recorded his ideas for this invention and logged his testing results of same in a single notebook ("Notebook"), which has entries spanning from April 17, 2004, to June 1, 2015. Id. ¶ 14. DvV called the invention "Trans Encryption" ("TE"). Id. ¶ 8.

### The PIIAA

In May, 2015, Defendant recruited DvV to work as a Senior SOC Analyst[2] in the Defendant's facility in Fairfax, Virginia. FAC ¶¶ 8, 16; see May 6, 2015 Engagement Letter, id. at Ex. 2. On May 6, 2015, Defendant sent an engagement letter to DvV, which had as an attachment the company's Proprietary Information and Invention Assignment Agreement ("PIIAA") and which instructed DvV to accept Defendant's offer of employment by executing said agreement. May 6, 2015 Engagement Letter, id. at Ex. 2. In May 2015, both DvV and Defendant signed the PIIAA, which took effect on DvV's first day of employment, June 1, 2015. Id. at 8. The executed PIIAA is attached as Exhibit 2 to the FAC.[3] The PIIAA contains a clause

---

[2] "SOC" stands for Security Operations Center.

[3] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

entitled "Prior Inventions," which provides, in part:

> I have disclosed on **Exhibit A** a complete list of all Inventions that (a) I have, or I have caused to be, alone or jointly with others, conceived, developed, or reduced to practice prior to the commencement of my employment by Company: (b) in which I have an ownership interest or which I have a license to use: (c) and that I wish to have excluded from the scope of this Agreement (collectively referred to as **"Prior Inventions"**). . . If, in the course of my employment with Company, I incorporate a Prior Invention into a Company process, machine or other work, I hereby grant Company a non-exclusive, perpetual, fully-paid and royalty-free, irrevocable and worldwide license . . . to reproduce, make derivative works of, distribute, publicly perform, and publicly display in any form or medium . . . , make, have made, use, sell, import, offer for sale, and exercise any and all present or future rights in such Prior Invention.

PIIA, FAC at Ex. 2, § 2.2. The PIIAA also contains the following assignment clause:

> Subject to the subsection entitled Government or Third Party and except for Inventions that I have set forth in **Exhibit A**, I hereby assign and agree to assign in the future (when any such Inventions or Intellectual Property Rights are first reduced to practice or first fixed in a tangible medium, as applicable) to Company all my right, title, and interest in and to any and all Inventions (and all Intellectual Property Rights with respect thereto) made, conceived, reduced to practice, or learned by me, either alone or with others, during the period of my employment by Company.

Id. § 2.3.

Plaintiff alleges that, prior to signing the PIIAA, DvV "insisted that the PIIAA be amended to exclude from its scope [TE] and other works of the inventor." FAC ¶ 17. When DvV executed the PIIAA, he attached as "Exhibit A" a handwritten list of eight "Prior Inventions," including *"(2) all work/design in TransEncryption."* PIIAA, id. at Ex. 2, at 9. DvV also handwrote the following clause beneath his signature on the signature page of the PIIAA: *"Addendum 'Exhibit A' attached including areas of work excluded from this PIIAA."* Id. at 8.

### The ROME Proposal

DvV began his employment with Defendant on June 1, 2015. FAC ¶ 14. On June 6, 2015, "on his own time and equipment," and understanding that it was "his work," DvV

4

conducted an additional test of TE on a network configuration that was transatlantic in scope. Id. ¶ 24. From June 16 through 18, 2015, DvV attended a data residency conference in Berlin.[4] Id. ¶¶ 18, 26. During his return trip, DvV realized that TE could be used to solve an important problem relating to international data residency, which could make TE marketable. Id. ¶ 25. On June 19, 2015, DvV outlined a "business proposal" for "engaging Defendant in this project" and pitched the proposal, including his "proposed terms for engaging Defendant," to his supervisor at Defendant, Brian Fennimore. Id. ¶ 26. DvV then told Mr. Fennimore that "a non-disclosure agreement would be needed to say more." Id. That same day, Mr. Fennimore told DvV via email that one of Defendant's co-founders was "very interested" in the proposal. Id. ¶ 27.

At Mr. Fennimore's request, DvV then drafted a "one-page summary of the business proposal," which DvV called "ROME." Id. ¶ 28. DvV submitted this one-page document and additional revisions thereof to Mr. Fennimore between June 22 and early July of 2015. Id. "In July [DvV] also drafted a longer document setting out the business case, laying out the proposal in detail and including a non-disclosure agreement." Id. The first two pages of this document are attached to the FAC as Exhibit 4. Plaintiff alleges that "[t]his proposal was written by DvV on his own time, on his own equipment, in his own personal office." Id.

On October 13, 2015, "Defendant asked DvV to again submit the ROME business proposal." FAC ¶ 33. Then, in early December 2015, Mr. Fennimore "notified DvV that Defendant would be interested in pursuing the ROME business proposal and a patent for [TE]." Id. ¶ 34. On December 2, 2015, DvV was contacted via email by Defendant's patent attorney who said he was "instructed to draft a patent application based on your invention disclosure

---

[4] The FAC defines data residency ("DR") as "the problem of information being created and/or owned subject to the control of one set of rules, laws, and customs (collectively 'laws') but then transported so that it comes under the control of another jurisdiction having different laws." FAC ¶ 22.

EMC-15-1154" and to file the application before the end of the year. Id. ¶ 35; id. at Ex. 5. DvV responded by email with his availability and indicated to the patent attorney that DvV "conceived" of the ROME concept "during and shortly after" his attendance at the data residency conference in Berlin. Id. at Ex. 5. In that same email, DvV also indicated that he had "reduced [the ROME concept] to practice on my own time, utilizing my own servers, and other than discussions with [Mr. Fennimore] regarding required disclosure, no company time or equipment has been authorized or used for this development." Id.

Daniel McLoughlin, the Associate General Counsel for EMC, Defendant's corporate owner, was copied on the above email exchange between DvV and Defendant's patent attorney. FAC ¶ 36. In response to the exchange, Mr. McLoughlin requested an "oral discussion" with DvV. Id. ¶ 37. This discussion took place on December 4, 2015, during which McLoughlin told DvV that "what DvV had done prior to employment belonged to DvV but what DvV had done after employment belonged to Defendant." Id. During that same discussion, "DvV asserted that under his agreement with Defendant what he did on [TE] on his own time and equipment belonged to him in the same way that [TE] had been specifically excluded from the PIIAA." Id. Plaintiff alleges that, on information and belief, "McLoughlin was not aware at that time that the Defendant's standard PIIAA had been modified for DvV to exclude Trans Encryption." Id.

### The '608 Patent Application

From December 3 through December 31, 2015, DvV worked with Defendant's patent attorney to complete the patent application "in accordance with the [TE] technology disclosed in the Notebook." Id. ¶ 39. On December 31, 2015, the patent attorney emailed DvV (1) the draft patent application; (2) a declaration form in need of DvV's signature, (3) an assignment form in need of DvV's signature; and (4) an Application Data Sheet ("ADS") naming Defendant as the

applicant pursuant to DvV's assignment. Id. ¶ 40. DvV then signed the declaration form but did not sign the assignment form. Id. DvV refused to execute the assignment because TE was "specifically excluded from his work with Defendant by the PIIAA" and "because the financial terms of his ROME business proposal had not yet been negotiated." Id.

Between December of 2015 and early 2016, DvV engaged in numerous communications with Defendant regarding TE. Id. ¶ 42. "DvV anticipated that negotiations in response to his ROME business proposal would resolve how the parties would be compensated, and this was the basis on which DvV helped with the patent preparation during December 2015." Id. DvV explicitly stated to Defendant that he would not assign his TE invention "without compensation and an executed written contract following through on his ROME business proposal." Id.

On January 28, 2016, Defendant filed the patent application, Serial No. 15/008,608, ("'608 Patent Application") with the United States Patent and Trademark Office ("USPTO") without DvV's knowledge or permission. Id. ¶ 44. This application included DvV's signed declaration but not an assignment form, which DvV refused to sign. Id. Plaintiff alleges that "[t]he '608 Application was completely derived from the pre-employment Notebook of the Inventor DvV, and did not include DvV's post Berlin work or work done as an employee of Defendant." Id. ¶ 41.

### DvV's Termination from Defendant

On or about March 10, 2016, DvV was relieved from his duties with Defendant. Id. ¶ 45. Three weeks later, he was terminated. Id. After his termination, Defendant transferred a small sum into DvV's account as a "bonus" for developing TE. Id. ¶ 46. DvV returned the sum to Defendant in full. Id.

On April 5, 2016, DvV filed a provisional application for a patent, No. 63/318,714, which consisted of the USPTO form and the Notebook ("'714 Provisional Application"). Id. ¶ 49.

On September 6, 2016, DvV assigned all of his right, title and interest in the '714 Provisional Application, the '608 Patent Application, TE, and the Notebook to TFOR LLC, the named Plaintiff in this case. Id. ¶ 50; see Executed Assignment, id. at Ex. 1.

## III.    LEGAL STANDARD

Defendant moves to dismiss Plaintiff's FAC in its entirety under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter, "Rule 12(b)(1)" and "Rule 12(b)(6)," respectively). ECF No. 16 at 1.

### A.    MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

A defendant may challenge subject matter jurisdiction under Rule 12(b)(1) in one of two ways: (1) by contending that the complaint is insufficient on its face to establish such jurisdiction or (2) by challenging the factual predicate of subject matter jurisdiction set forth in the complaint. Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). In the first case, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction. Id. In the second case, the plaintiff is afforded less procedural protection: the district court need not presume the truthfulness of the complaint and is instead "entitled to decide disputed issues of fact with respect to subject matter jurisdiction." Id. The court may consider evidence outside the pleadings to make this determination. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). Additionally, in the second case, the plaintiff bears the burden of proving subject matter jurisdiction. Adams, 697 F.2d at 1219.

### B. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may also move to dismiss a complaint under Rule 12(b)(6) on the grounds that it fails to state a claim on which relief can be granted. Such a motion should be granted if it appears that the plaintiff is not "entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." Harrison v. United States Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988) (citation omitted). To survive a motion to dismiss, the facts alleged in the complaint "must be enough to raise a right to relief above a speculative level" and must be sufficient "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547. In resolving a Rule 12(b)(6) motion, the court must assume the truth of all facts alleged in the complaint and construe the factual allegations in favor of the non-moving party. Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009). But the court is not bound by the complaint's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, the court may not consider any matters outside the pleadings, but it may consider written instruments that are attached as exhibits to a pleading, Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013), as these exhibits are "part of the pleading for all purposes," Fed. R. Civ. P. 10(c). Where the complaint's bare allegations conflict with such an exhibit, the exhibit controls. Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991).

## IV. DISCUSSION

Defendant's Motion to Dismiss seeks dismissal of each of the seven claims alleged in Plaintiff's First Amended Complaint. They are discussed in turn.

### A. FIRST CLAIM: DECLARATORY JUDGMENT

Plaintiff's First Claim seeks a declaratory judgment that (1) DvV was the rightful applicant and owner of the invention when the '608 Patent Application was filed; and (2) that all ownership, rights, and interests in TE, the ROME business proposal, and the '608 Patent

9

Application are exclusively owned by Plaintiff. FAC ¶¶ 97–100. In its Motion, Defendant moves to dismiss the First Claim on two grounds: (1) that the claim is moot, and (2) that it fails to state a claim on which relief can be granted.

### 1. Applicable Law

Plaintiff brings its First Claim under the Declaratory Judgment Act ("Act"), which provides that in "a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The purpose of the Act is to enable a person who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 977 (Fed. Cir. 1993). The Fourth Circuit has identified three necessary elements to state a claim under the Act: (1) there must be actual controversy between the parties "of sufficient realty to warrant issuance of a declaratory judgment"; (2) there must be an independent basis for the court's jurisdiction over the parties; and (3) the district court cannot abuse its discretion in choosing to exercise jurisdiction over the action. Kettler Int'l, Inc. v. Starbucks Corp., 55 F. Supp. 3d 839, 846 (E.D. Va. 2014) (quoting Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004)).

An "actual controversy" for these purposes must be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and [must] be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–241 (1937)). A case becomes moot, however, if "a material change in circumstances"

entirely eliminates the controversy between the parties. Samsung Elecs. Co. v. Rambus, Inc., 398 F. Supp. 2d 470, 476 (E.D. Va. 2005) (citing Cardinal Chem. Co. v. Morton Int'l Inc., 508 U.S. 83, 98 (1993)). If the case becomes moot at any point in the litigation, the court must dismiss the cause for want of jurisdiction. Id. (citing Tucker v. Phyfer, 819 F.2d 1030, 1033 (11th Cir. 1987)). However, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (internal citation omitted).

> It is well-settled that the voluntary cessation of allegedly unlawful conduct does not moot a case in which the legality of that conduct has been placed in issue. The rationale for this rule is straightforward: "mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'"

Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 74–75 (1983) (quoting United States v. Phosphate Export Assn., 393 U.S. 199, 203 (1968) (internal citation omitted)). In that instance, Defendant faces a "heavy burden to establish mootness" and must establish that there is no "reasonable likelihood that the wrong will be repeated." Heckler, 464 U.S. at 72.

### 2. Plaintiff's First Claim is Not Moot.

Defendant argues that the First Claim must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because there is no "case or controversy" between the parties as required under Article III. Def. Mem., ECF No. 17, at 7 (citing Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)). In support of this argument, Defendant submitted evidence to the Court that it "abandoned" its pursuit of the '608 Patent Application in January, 2017, and communicated this change of position to Plaintiff's counsel. Id. (citing 2017/01/03 Brown Email to Christofferson, attached as Exhibit A; 2017/01/24 Davis Email to Thornton and Christofferson, attached as Exhibit B). Defendant also represents that, on January 25, 2017, it filed with the USPTO an amended ADS sheet with respect to the '608 Patent Application in which Defendant

"remov[ed] itself as the patent applicant, thereby giving [DvV] the ability to prosecute the patent application on his own." Id. Defendant contends that these actions eliminated the live controversy between the parties. Id. The Court disagrees.

The FAC alleges that Defendant unlawfully asserted ownership of the patent when it filed the '608 Patent Application as the applicant without an executed assignment or other form of authorization from DvV, the inventor. This allegedly unlawful conduct is at the heart of the parties' dispute. Defendant cannot moot this controversy by "abandoning" its pursuit of the '608 Patent Application without showing that the alleged wrongful conduct is not reasonably likely to be repeated. Heckler, 464 U.S. at 72. Defendant has not met this heavy burden. Both parties recently advised the Court that Plaintiff is currently pursuing at least one Patent Cooperation Treaty ("PCT") application that claims priority to the '608 Patent Application and claims the same subject matter as the '608 Patent Application. See Plaintiff's Status Report, ECF No. 32; Defendant's Status Report, ECF No. 33. Because Defendant has not disclaimed its rights of ownership in the subject matter of the '608 Patent Application, there is a reasonable likelihood that Defendant will resume its assertion of ownership rights with respect to Plaintiff's patented invention through proceedings in the USPTO. Defendant essentially confirms this risk in its briefing: "If [DvV] prosecutes the patent application and claims only subject matter that is rightfully his under the PIIAA, there will be no dispute as to ownership." Def. Mem., ECF No. 17, at 13 (emphasis added).

Nevertheless, Defendant cites to Reckitt Benckiser Pharmaceuticals, Inc. v. Biodelivery Sciences International, Inc. to argue that the parties' dispute as to ownership is "not sufficiently immediate" to constitute an actual controversy. No. 5:13-CV-760-BO, 2014 WL 2119822, at *1 (E.D.N.C. May 21, 2014). But Reckitt is clearly distinguishable. In that case, the court

addressed the risk of future patent infringement and ultimately found that the parties' dispute was not sufficiently immediate to constitute an actual controversy because at least two "contingent future events" needed to occur before the plaintiff would be at legal risk of patent infringement. Id. at *2–3. Here, by contrast, Defendant has asserted and continues to assert contractual rights of ownership in DvV's invention, which has allegedly been assigned to Plaintiff. See, e.g., Def. Mem., ECF No. 17, at 15 (asserting that "[DvV] was under an obligation to assign any intellectual property rights surrounding the ROME business proposal to [Defendant] under the terms of the PIIAA"). And Defendant refuses to disavow any rights of ownership in the invention at issue. See Danisco U.S., Inc. v. Novozymes A/S, 744 F.3d 1325, 1331 (Fed. Cir. 2014) (defendant's failure to offer assurances is relevant to the immediacy inquiry).

For these reasons, the Court finds that the First Claim alleges an actual controversy as required under Article III and the Declaratory Judgment Act. Therefore, Defendant's Motion to Dismiss the First Claim as moot is hereby **DENIED**.

### 3.    Plaintiff States a Claim under the Declaratory Judgment Act.

Defendant also argues that the First Claim must be dismissed under Rule 12(b)(6) because it fails to state a claim for which relief may be granted. Def. Mem., ECF No. 17, at 8. In support, Defendant relies on the same mootness argument above to argue that Plaintiff has failed to allege a live controversy as required to state a claim under the Declaratory Judgment Act. Additionally, Defendant argues that, among the various federal patent statutes cited by Plaintiff as authority for the First Claim, the only one that creates a federal cause of action is 35 U.S.C. § 256, which is inapplicable to the facts alleged. Id. at 8–9. Defendant thus concludes that the First Claim fails to state a cause of action and must be dismissed. The Court disagrees.

The First Claim satisfies the three necessary elements to state a claim under the Declaratory Judgment Act. First, as stated above, Plaintiff has alleged a "case of actual

13

controversy," which has not been mooted by Defendant's actions. Second, Plaintiff has invoked this Court's diversity jurisdiction under 28 U.S.C. § 1332 as an independent basis for jurisdiction,[5] which Defendant has not disputed. See FAC ¶ 7.[6] Third, the Court the finds it appropriate to exercise its jurisdiction over the claim because it can be addressed effectively and efficiently in this Court. See Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 421 (4th Cir. 1998) ("[T]he decision to grant or deny a petition for declaratory relief 'is a matter resting in the sound discretion of the trial court.'") (internal citation omitted).

Because the First Claim states a claim for relief under the Declaratory Judgment Act, Defendant's Motion to Dismiss Plaintiff's First Claim under Rule 12(b)(6) is hereby **DENIED**.

### B.    SECOND CLAIM: MISAPPROPRIATION OF INVENTION

Plaintiff's Second Claim seeks damages in the sum of twenty million dollars for Defendant "knowingly and without legal basis misappropriating the invention Trans Encryption owned by Plaintiff by filing the '608 Application as applicant" without right or authority. FAC ¶ 102. Defendant moves to dismiss this claim on the grounds that (1) it is moot, and (2) the claim is preempted by the Virginia Uniform Trade Secrets Act.

As a threshold matter, this Court has recently held that common-law misappropriation is not a cognizable cause of action under Virginia law. Thousand Oaks Barrel Co., LLC v. Deep S. Barrels LLC, No. 1:16-CV-1035, 2017 WL 1074936, at *11 (E.D. Va. Mar. 20, 2017) ("No Supreme Court of Virginia decision has adopted a claim for common law misappropriation, and

---

[5] Plaintiff also invokes the Court's original jurisdiction under 28 U.S.C. § 1338, arguing that the parties' dispute necessarily involves federal patent statutes and regulations. Pl. Resp., ECF No. 18 at 14. Defendant disputes this and argues that the issues surrounding patent ownership as alleged in the FAC are strictly matters of state law, which do not satisfy the standard for § 1338 jurisdiction. Def. Reply, ECF No. 20 at 4 (citing Millipede Marketing Ltd. v. Harsley, 928 F. Supp. 2d 109, 116 (2013)). The Court declines to reach this issue because it has determined that Plaintiff's First Claim states a valid claim for relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

[6] The FAC alleges that Plaintiff, a Virginia limited liability company, and Defendant, a Delaware corporation, are citizens of different states, and Plaintiff's claims seek damages in excess of $75,000. Id.

14

it is inappropriate for a federal court to create such a claim."). In that opinion, Judge Ellis outlines the history of such a claim and explains that Virginia has instead adhered "to a narrow, sharply defined common law definition of unfair competition, i.e. 'deception, by means of which goods of one dealer are palmed off as those of another.'" Id. at *11 n.26 (quoting Monoflo Int'l, Inc. v. Sahm, 726 F. Supp. 121, 127 (E.D. Va. 1989) (citing Benjamin T. Crump Co., Inc. v. J. L. Lindsay, Inc., 130 Va. 144 (1921))). The Court then dismissed the plaintiff's claim for misappropriation on that basis.[7] Id. at *11.

Accordingly, the Court finds that Plaintiff's Second Claim for misappropriation is not a cognizable cause of action under Virginia law,[8] and therefore **DISMISSES** Plaintiff's Second Claim **WITH PREJUDICE** butorrr without prejudice to Plaintiff's remaining claims in the First Amended Complaint.

## C.    THIRD CLAIM: MISAPPROPRIATION OF TRADE SECRET

Plaintiff's Third Claim seeks damages in the amount of ten million dollars for Defendant "wrongfully misappropriating Plaintiff's trade secrets" as well as the "imposition of liability for a reasonable royalty for Defendant's unauthorized use of the trade secrets." FAC ¶¶ 103–104. In its Motion to Dismiss, Defendant argues that Plaintiff has failed to state a claim under the Virginia Uniform Trade Secrets Act because it has not alleged facts sufficient to satisfy the two necessary elements: (1) the existence of trade secret and (2) misappropriation. ECF No. 17 at 15.

### 1.    Applicable Law

The Virginia Uniform Trade Secrets Act ("VUTSA"), Va. Code Ann. § 59.1-336, provides a cause of action for the wrongful acquisition, disclosure, or use of a trade secret. "To

---

[7] Judge Ellis' holding is consistent with the finding of Judge Friedman of this Court many years earlier. See Superformance Int'l, Inc. v. Hartford Cas. Ins. Co., 203 F. Supp. 2d 587, 589 (E.D. Va. 2002), aff'd on other grounds, 332 F.3d 215 (4th Cir. 2003).

[8] Because common-law misappropriation is not cognizable under Virginia law, the Court does not need to address Defendant's other arguments for dismissal.

state a trade secret claim, a plaintiff must allege sufficient facts to establish (1) the existence of a

trade secret, and (2) its misappropriation by the defendant." <u>Preferred Sys. Sols., Inc. v. GP</u>

<u>Consulting, LLC</u>, 284 Va. 382, 405 (2012). VUTSA defines a "trade secret" as

> information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:
>> 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>> 2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Va. Code § 59.1–336. The Act defines "misappropriation" as

>> 1. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>> 2. Disclosure or use of a trade secret of another without express or implied consent by a person who
>>> a. Used improper means to acquire knowledge of the trade secret; or
>>> b. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was
>>>> (1) Derived from or through a person who had utilized improper means to acquire it;
>>>> (2) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;
>>>> (3) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>>>> (4) Acquired by accident or mistake.

<u>Id.</u> "Improper means" is defined to include "theft, bribery, misrepresentation, use of a computer

or computer network without authority, breach of a duty or inducement of a breach of a duty to

maintain secrecy, or espionage through electronic or other means." <u>Id.</u>

Under VUTSA, disclosure of the information does not automatically result in the loss of

trade secret status. As this Court has explained: "[t]he secrecy need not be absolute; the owner

of a trade secret may, without losing protection, disclose it to a licensee, an employee, or a

stranger, if the disclosure is made in confidence, express or implied." <u>MicroStrategy Inc. v. Bus.</u>

Objects, S.A., 331 F. Supp. 2d 396, 416 (E.D. Va. 2004) (quoting Tao of Sys. Integration, Inc. v.

Analytical Servs. & Materials, Inc., 299 F.Supp.2d 565, 574 (E.D. Va. 2004) (quoting Dionne v.

Southeast Foam Converting & Packaging, Inc., 240 Va. 297 (1990))).

> Furthermore, the requirement that the information not be generally known refers
> to the knowledge of other members of the relevant industry—the persons who can
> gain economic benefit from the secret. See Uniform Trade Secrets Act, § 1,
> comment. Finally, only reasonable efforts must be taken to maintain secrecy.
> Restricting access to information, implementing confidentiality agreements, and
> providing physical barriers to access are all reasonable efforts.

MicroStrategy Inc., 331 F. Supp. 2d at 416. For example, this Court has held that alleging the

use of secrecy provisions in an employment contract sufficiently pleads "reasonable efforts" to

maintain secrecy of a trade secret to survive a motion to dismiss. Informatics Applications Grp.,

Inc. v. Shkolnikov, 836 F. Supp. 2d 400, 422 (E.D. Va. 2011).

### 2. Plaintiff Has Alleged the Existence of a Trade Secret under VUTSA.

In its Motion to Dismiss, Defendant argues that the Third Claim fails to state a claim

because the FAC fails to allege the existence of a trade secret. Specifically, Defendant argues

that neither TE nor ROME was subject to efforts that were reasonable under the circumstances to

maintain their secrecy as required to constitute a trade secret under VUTSA. ECF No. 17 at 13–

14. In support, Defendant points to the following allegations of the FAC: (1) DvV voluntarily

disclosed and discussed the contents of his Notebook with Defendant via the company's patent

attorney, ECF No. 17 at 13 (citing FAC ¶¶ 38–39); (2) DvV had numerous discussions with

Defendant by email and telephone concerning TE during December 2015 and early 2016, id.

(citing FAC ¶ 42); (3) DvV voluntarily disclosed the ROME project summary to Defendant in

2015, id. (citing FAC ¶ 28); and (4) DvV made all such disclosures "without a nondisclosure or

confidentiality agreement", id. at 13–14. Defendant's argument is without merit for two reasons.

First, the FAC alleges numerous efforts by DvV to maintain the secrecy of TE and

ROME. For example, when DvV first communicated his idea to Defendant to apply TE to the data residency problem, the FAC alleges that DvV "told [Mr. Fennimore] a non-disclosure agreement would be needed to say more" and that "[DvV] did not discuss with [Mr. Fennimore] any uses of [TE] beyond the specific area of DR." FAC ¶ 26. The FAC also alleges that the earliest drafts of the ROME business proposal were "one-pagers," and that when DvV drafted a longer version of the ROME business proposal in July 2015, it "include[d] a non-disclosure agreement." FAC ¶ 28. Furthermore, the Title Page and Table of Contents of this longer ROME document, which are attached to the FAC as Exhibit 4, are clearly stamped with the phrase "Confidential Information subject to the attached Confidentiality Document" on the bottom of each page. See FAC at Ex. 4. Defendant's claim that no such agreement was actually executed is irrelevant on a Rule 12(b)(6) motion, which "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

Second, the Court finds that the allegations of the FAC are sufficient to establish that DvV's efforts to maintain secrecy were reasonable under the circumstances. The FAC repeatedly alleges that when DvV voluntarily disclosed details of TE or ROME to Defendant, he did so based on the allegedly false understanding that Defendant accepted his business proposal and would maintain the secrecy of his disclosures. See, e.g., FAC ¶¶ 34–35 (Defendant's patent attorney contacted DvV about the same time that Mr. Fennimore "notified DvV that Defendant would be interested in pursuing the ROME business proposal and a patent for [TE]."); id. ¶ 36 (Prior to making any disclosures to Defendant's patent attorney, DvV notified the patent attorney by email that DvV developed the invention and that "no company time or equipment has been authorized or used for this development."); id. ¶ 37 (On December 4, 2015, DvV had an "oral

discussion" with counsel for Defendant during which DvV asserted that [TE] was excluded from the PIIAA and that "what he did on [TE] on his own time and equipment belonged to him."); id. ¶ 42 ("DvV anticipated that negotiations in response to his ROME business proposal would resolve how the parties would be compensated, and this was the basis on which DvV helped with the patent preparation during December 2015."). As noted above, disclosures to employers that are made in confidence, express or implied, qualify as reasonable efforts to maintain secrecy under VUTSA. Tao of Sys. Integration, Inc., 299 F.Supp.2d 565, 574 (E.D. Va. 2004). Therefore, the FAC sufficiently alleged the existence of a trade secret under VUTSA.

### 3. Plaintiff Has Alleged Misappropriation under VUTSA.

Defendant also argues that Plaintiff's Third Claim fails to state a claim under VUTSA because the FAC fails to allege any "improper means" of obtaining the alleged trade secret that could constitute misappropriation under the statute. ECF No. 17 at 14. Specifically, Defendant argues that the FAC fails to allege improper means because (1) Plaintiff disclosed TE and ROME to Defendant through the course of "ordinary business negotiations" with its employer, and (2) Plaintiff was contractually obligated under the PIIAA "to assign any intellectual property rights surrounding the ROME business proposal to [Defendant]." ECF No. 17 at 15 (citing Babcock & Wilcox Co. v. Arena NP, Inc., 292 Va. 165, 206 (2016) ("There can be no misappropriation where acquisition, disclosure, and use of a trade secret have been expressly authorized by contract.")). In support of this latter argument, Defendant argues that the FAC admits that DvV "learned and conceived of TE's applicability to Data Residency issues during his employment with [Defendant]" and that he drafted the ROME concept, that is, the possible "use" of the TE invention, during his employment. Id. at 14 (citing FAC ¶¶ 23, 36, 28). For the reasons below, this second ground for dismissal fails because it is premised on factual disputes rather than the sufficiency of the complaint. Edwards, 178 F.3d at 244.

19

First, Defendant's argument that the FAC's allegations of DvV's "voluntary" or "willful" disclosures preclude "improper means," Reply Br. at 6, ignores the FAC's allegations that Defendant's misrepresentations induced such disclosures. See FAC ¶ 67 ("Defendant . . . obtain[ed] the trade secret . . . by purporting to enter into a business arrangement proposed by DvV" and then securing a patent of the invention "before completion of the contemplated compensation agreement.") Obtaining a trade secret by misrepresentation constitutes "improper means" under VUTSA. Va. Code § 59.1–336.

Second, Defendant's reliance on the terms of the PIIAA fails to assume the truth of well-pleaded factual allegations contained in the FAC. It is true that, on a Rule 12(b)(6) motion, the Court does not assume the truth of legal conclusions, including matters of contract interpretation. Ashcroft, 556 U.S. at 678. But even if the Court were to adopt Defendant's interpretation of the PIIAA, Defendant's argument would still be premised on a factual dispute surrounding what elements of DvV's invention, if any, were "conceived, reduced to practice, or learned by [him], either alone or with others, during the period of [his] employment by [Defendant]." PIIAA, FAC at Ex. 2, § 2.3. Factual disputes must be resolved at a later stage of the litigation. See Davis v. City of Greensboro, N.C., 770 F.3d 278, 285 (4th Cir. 2014).

For example, the FAC alleges that all of the claims in the '608 Patent Application are derived from his TE Notebook and do not reflect any concepts or ideas generated during the course of his employment. FAC ¶ 41. The FAC also alleges that the ROME proposal was "written by DvV on his own time, on his own equipment, in his own personal office." Id. ¶ 28. The FAC contains several additional allegations that DvV believed and communicated his belief that TE/ROME was developed on his own time, using his own resources. Id. ¶¶ 24, 36, 37; see also id. at Exs. 3, 5. Defendant has failed to accept these allegations as true and instead argues

that DvV developed his invention during the course of his employment and thus was contractually obligated to assign his invention to Defendant. Such attempts to litigate the merits of Plaintiff's claim are improper on a motion to dismiss.

For these reasons, the Court finds that Plaintiff's Third Claim states a claim for misappropriation of a trade secret under VUSTA. Accordingly, Defendant's Motion to Dismiss with respect to Plaintiff's Third Claim is hereby **DENIED.**

### D. FOURTH CLAIM: CONVERSION

Plaintiff's Fourth Claim seeks damages in the sum of ten million dollars for "conversion of Plaintiff's property for Defendant's own use." FAC ¶ 104. Defendant moves to dismiss this claim on two grounds: (1) that it fails to allege any tangible property or property merged with tangible property as required to state a claim for conversion, and (2) that the claim is preempted by VUTSA. ECF No. 17 at 16.

Under Virginia law, the tort of conversion encompasses "any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." United Leasing Corp. v. Thrift Ins. Corp., 247 Va. 299, 305 (1994) (internal quotation omitted). In general, this cause of action applies only to tangible property. Id. "However, many courts have recognized the tort of conversion in cases where intangible property rights arise from or are merged with a document, such as a valid stock certificate, promissory note, or bond." Id.

In this case, Plaintiff alleges that Defendant "converted the subject matter of the negotiation between DvV and Defendant," that is, "the description of the invention Trans Encryption and the description of the ROME business proposal." FAC ¶ 72. But as Defendant points out, a patentable idea is not tangible property that can be subject to conversion. See ECF No. 17 at 16. While the FAC alleges the existence of tangible expressions of DvV's invention

(e.g., the Notebook, the written ROME business proposal, the drafted claims in the '608 Patent Application), the FAC does not allege that any of these documents were converted by Defendant. Therefore, Plaintiff's Fourth Claim is hereby **DIMISSED WITHOUT PREJUDICE**.

As to Defendant's second ground for dismissal, it is true that VUTSA expressly "displaces conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret" excluding remedies based in contract or criminal law. Va. Code § 59.1-341; see also E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc., 688 F. Supp. 2d 443, 451 (E.D. Va. 2009). However, courts will not dismiss a claim as preempted on a motion to dismiss "unless it can be clearly discerned that the information in question constitutes a trade secret" under VUTSA. E.I. DuPont, 688 F. Supp. 2d at 451. Because Defendant disputes that TE and ROME constitute a trade secret, the Court cannot dismiss alternative theories of relief as preempted by VUTSA at this early stage.

### E. FIFTH CLAIM: MISAPPROPRIATION OF TRADE SECRET (FEDERAL)

Plaintiff's Fifth Claim alleges that Defendant misappropriated its trade secrets, TE and ROME, in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b) ("DTSA"), and seeks "imposition of liability for a reasonable royalty" for the unauthorized use of these trade secrets under § 1836(b)(3)(B) as well as exemplary damages under § 1836(b)(3)(C) in an amount no more than two times the amount of damages awarded for willful and malicious misappropriation. FAC ¶¶ 82, 104, 105.

First, Defendant argues that this claim should be dismissed because it "fails to allege any nexus between interstate or foreign commerce and Trans Encryption or the ROME business proposal" as required under § 1836(b)(1). ECF No. 17 at 17 (citing Hydrogen Master Rights, Ltd. v. Weston, No. CV 16-474, 2017 WL 78582, at *10 (D. Del. Jan. 9, 2017)). The Court disagrees. The FAC contains numerous allegations stating that purpose of the alleged trade

secret at issue is to solve the international data residency problem. See, e.g., FAC ¶¶ 21, 22, 24. This clearly satisfies the requirement under § 1836(b)(1) the trade secret be "related to a product or service used in, or intended for use in, interstate or foreign commerce."

However, Defendant's second ground for dismissal of the Fifth Claim is valid. DTSA became effective on May 11, 2016, and therefore "a plaintiff states a plausible claim for relief only if it 'sufficiently alleges a prohibited act occurring after [that date].'" Weston, 2017 WL 78582, at *10 (quoting Adams Arms, LLC v. Unified Weapon Sys., Inc., 2016 WL 5391394, at *6 (M.D. Fla. Sept. 27, 2017)). Here, like in Weston, the FAC only makes a conclusory allegation of continuing misappropriation after the effective date, which is not sufficient. See FAC ¶ 81. The FAC alleges no specific act of misappropriation occurring on or after May 11, 2016. The only "improper means" alleged in the FAC include: (1) purporting to enter the business arrangement; (2) obtaining DvV's cooperation to turn the trade secret into a patent; and (3) attempting to secure patent as the applicant and owner of trade secret, all of which occurred before May 11, 2016. See FAC ¶ 79. Plaintiff retorts that Defendant continued its misrepresentations to the USPTO with respect to the '608 Patent Application well into 2017. See Pl. Resp., ECF No. 18, at 21. But these alleged misrepresentations are not the basis for Plaintiff's DTSA claim. Therefore, Plaintiff's Fifth Claim fails to state a claim on which relief can be granted and is hereby **DISMISSED WITHOUT PREJUDICE**.[9]

F.    SIXTH CLAIM: BREACH OF CONTRACT AND/OR CONSTRUCTIVE TRUST

Plaintiff's Sixth Claim alleges that "Defendant accepted DvV's ROME business proposal by going forward with the patent application," which created an enforceable contract with DvV.

---

[9] Defendant also briefly incorporates its arguments with respect to the Second Claim (misappropriation under VUTSA) to argue that Plaintiff fails to allege a trade secret and fails to allege any improper means of appropriating the trade secret as required under DTSA. ECF No. 17 at 18 n.5. These arguments fail for the reasons previously stated by the Court. See supra Part IV.C.

FAC ¶ 83. It further alleges that Defendant breached this contract and/or its duty under constructive trust by failing "to follow through on the business proposal," i.e. to "negotiate compensation" details with DvV. Id. ¶¶ 87–88. The Sixth Claim also alleges that "Defendant is under a constructive trust to preserve this agreement pending finalization of terms." Id. ¶ 85. Defendant moves to dismiss the Sixth Claim on the grounds that it fails to state a claim for either breach of contract or breach of constructive trust. ECF No. 17 at 18–20.

### 1.     Plaintiff Fails to State a Claim for Breach of Contract.

Under Virginia law, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Squire v. Virginia Hous. Dev. Auth., 287 Va. 507, 517 (2014) (internal citation omitted). "For a contract to be enforceable, 'there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances.'" Cyberlock Consulting, Inc. v. Info. Experts, Inc., 876 F. Supp. 2d 672, 678 (E.D. Va. 2012) (quoting Allen v. Aetna Cas. & Sur. Co., 222 Va. 361, 364 (Va. 1981)). In Defendant's Motion to Dismiss, Defendant argues that the Sixth Claim fails to allege the requisite mutual assent between the parties to constitute an enforceable contract. Def. Mem., ECF No. 17 at 18. The Court agrees.

The FAC alleges that Defendant breached its contract with DvV by "fail[ing] to negotiate compensation details" with DvV as required under the ROME business proposal. FAC ¶ 87. However, "[i]t is well settled under Virginia law that agreements to negotiate at some point in the future are unenforceable." Beazer Homes Corp. v. VMIF/Anden Southbridge Venture, 235 F. Supp. 2d 485, 490 (E.D. Va. 2002). This is because "agreements to agree in the future" are "too vague and too indefinite to be enforced." Cyberlock, 876 F. Supp. 2d at 678 (quoting W.J. Schafer Assocs., Inc. v. Cordant, Inc., 254 Va. 514, 519 (Va. 1997)).

In its Second Supplemental Brief, Plaintiff insists that the alleged agreement between DvV and Defendant is "sufficiently specific" to survive a motion to dismiss. ECF No. 35 at 4 (citing Fransmart LLC v. Freshii Dev. LLC, 768 F. Supp. 2d 851, 869 (E.D. Va. 2011) (noting that, in Virginia, "the law does not favor declaring contracts void for indefiniteness and uncertainty") (internal citation omitted)). Plaintiff argues that, "[w]hile the precise balance between upfront payment and royalty discount had not been decided," the terms of compensation were concrete enough to constitute an enforceable contract. Pl. Suppl. Br. II, ECF No. 35, at 5. But this "precise balance" must be defined for the contract to be enforceable because it constitutes Defendant's critical obligation under the alleged contract. See Dodge v. Trustees of Randolph-Macon Woman's Coll., 276 Va. 1, 5–6 (2008) ("[T]he contract must obligate the contracting parties to matters that are definitely ascertained or ascertainable.") (citation omitted).

Because the FAC alleges that the parties never agreed to the material term of compensation, no valid contract has been alleged and thus no breach could have occurred. See FAC ¶ 42 (admitting that "negotiations in response to [DvV's] Rome business proposal had not yet resolved how the parties would be compensated"). Accordingly, Plaintiff's breach of contract claim as alleged in its Sixth Claim is hereby **DISMISSED WITHOUT PREJUDICE.**

### 2. Plaintiff Fails to State a Claim for Constructive Trust.

Plaintiff's Sixth Claim also fails to state a cognizable claim for breach of constructive trust under Virginia law. A constructive trust is a remedy created by the law, independently of the intention of the parties, which requires a person holding title to property to convey the property to another in order to prevent fraud or injustice. Buchanan v. Buchanan, 266 Va. 207, 214 (2003) (citing Leonard v. Counts, 221 Va. 582, 588 (1980)). Defendant is correct that the FAC fails to allege any facts to support this form of equitable relief. See Def. Mem., ECF No. 17 at 20. Plaintiff responds that "the constructive trust relates to the contract process" and thus is

25

not limited to "real property." Pl. Resp., ECF No. 18, at 27. But this assertion is contradicted by Virginia law.[10] See Buchanan, 266 Va. at 214. Accordingly, Plaintiff's claim for breach of constructive trust as alleged in the Sixth Claim is **DISMISSED WITHOUT PREJUDICE**.

### G.   SEVENTH CLAIM: FRAUD IN THE INDUCEMENT

The Seventh Claim in the FAC is entitled "Fraud in the Inducement." FAC at 22. It alleges that "Defendant induced DvV to provide the details of the invention [TE] and the business plan ROME by knowingly and falsely representing to DvV by Defendant's conduct that it had accepted DvV's business proposal," id. ¶ 90, and would thus "compensate him by a separate contract," id. ¶ 94. The FAC further alleges that "Plaintiff was injured by Defendant's actions." Id. ¶¶ 93, 95.

Defendant moves to dismiss the Seventh Claim under Rule 12(b)(6) on two grounds: (1) that it fails to plead with particularity any misrepresentations of present or pre-existing fact made by Defendant that could constitute actual or constructive fraud, and (2) that the facts alleged in the FAC preclude the possibility that DvV reasonably relied on any alleged promise of future compensation. Def. Mem., ECF No. 17, at 21–22.

### 1.   Applicable Law

Virginia law provides a cause of action for both actual fraud and constructive fraud. The elements of actual fraud are: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6)

---

[10] In its response brief, Plaintiff also references Defendant's "duty of good faith and fair dealing" to complete a business deal once the other party has performed his duties. Pl. Resp., ECF No. 18, at 27. However, the implied covenant of good faith and fair dealing is a contractual duty inherent in every contract. Enomoto v. Space Adventures, Ltd., 624 F. Supp. 2d 443, 450 (E.D. Va. 2009). If such duty is breached, it gives rise to a breach of contract claim, not a constructive trust. Id. (noting that the elements of such a claim are "(1) a contractual relationship between the parties, and (2) a beach of the implied covenant"). But here, no enforceable contract has been alleged. See supra Part IV.F.1.

resulting damage to the party misled." Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 256 Va. 553, 557–558 (1998) (internal citation omitted). The elements of constructive fraud are essentially the same except the false representation is made "innocently or negligently." Id. In either case, the "fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." Mortarino v. Consultant Eng'g Servs., Inc., 251 Va. 289, 293 (1996).

Fraud in the inducement of a contract is a species of actual fraud under Virginia law. Augusta Mut. Ins. Co. v. Mason, 274 Va. 199, 204 (2007). However, this cause of action only lies if "the duty tortuously or negligently breached [is] a common law duty, not one existing between the parties solely by virtue of the contract." Id. at 205. Such claims generally cannot be predicated on "unfulfilled promises," lest every breach of contract sound in an action in tort for fraud. Abi-Najm v. Concord Condominium, LLC, 280 Va. 350, 362 (2010) (quoting Lloyd v. Smith, 150 Va. 132, 145 (1928)). The exception is where "a defendant makes a promise that, when made, he has no intention of performing" because, in that case, the promisor's misrepresentation as to his state of mind constitutes the misrepresentation of a present fact. Station #2, LLC v. Lynch, 280 Va. 166, 172 (2010); see Lloyd, 150 Va. at 146–47 (fraud can be based on the failure to perform a promise "where the promise is the device to accomplish the fraud"). If such a promise was made to induce the promisee to act to his detriment, it is actionable as an actual fraud. Colonial Ford Truck Sales, Inc. v. Schneider, 228 Va. 671, 677 (1985); see also Sea-Land Service, Inc. v. O'Neal, 224 Va. 343, 351 (1982).

When alleging fraud in federal court, litigants must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b) ("Rule 9(b)"). To satisfy this standard, the plaintiff must plead with particularity "the time, place, and contents of the false

27

representations, as well as the identity of the party making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 786 (4th Cir. 1999). "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." Id. at 783 n.5.

### 2. The Seventh Claim Fails to State a Claim for Fraud.

The Court finds that Plaintiff has not satisfied Rule 9(b)'s pleading standard for fraud claims. The allegations of the Seventh Claim suggest that Defendant fraudulently induced DvV to disclose his invention by making a false promise to "follow through with negotiations" about compensation. See FAC ¶ 90. Plaintiff purports to identify "conduct" by which Defendant falsely represented that it accepted the ROME business proposal, including (1) engaging the patent attorney to prepare the '608 Patent Application, (2) paying DvV a bonus for developing TE, and (3) terminating DvV when he refused to assign his invention to Defendant. Id. ¶¶ 92–93. But none of these actions can be reasonably construed as a promise of any kind. Nor do they constitute misrepresentations of a present intent to enter into a contract. Therefore, the Seventh Claim fails to state a claim for fraud predicated on an unfulfilled promise.

To the extent Plaintiff relies on another theory of fraud, it is not sufficiently pled to state a claim for relief. The Seventh Claim fails to state with particularity "the time, place, and contents" of any false statements of present or pre-existing fact, which is required to state a claim for actual or constructive fraud. See Fed. R. Civ. P. 9(b); Mortarino, Inc., 251 Va. at 293. Nor does the claim allege any damages suffered by the party misled, which is a necessary element of fraud under Virginia law. Richmond Metro. Auth., 256 Va. at 557–558. For these reasons, Plaintiff has not met the heightened pleading standard for alleging fraud under Rule 9(b). Accordingly, the Seventh Claim is hereby **DISMISSED WITHOUT PREJUDICE.**

### 3.  Assignability of Fraud Claims under Virginia Law.

At the hearing on Defendant's Motion to Dismiss, the Court raised the issue of whether Plaintiff, as assignee, has standing to bring DvV's fraud claim.  Per the Court's instruction, the parties submitted post-hearing briefs on this issue.  See Pl. Supp. Br. II, ECF No. 35; Def. Suppl. Resp. II, ECF No. 38.  However, because the Court has found that Plaintiff has failed to state a claim for fraud, the Court does not need to reach the issue of Plaintiff's standing at this time.

## V.  CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss the First Amended Complaint, ECF No. 12, is **GRANTED IN PART** and **DENIED IN PART** as follows:

Defendant's Motion to Dismiss is **DENIED** with respect to the First and Third Claims;

Defendant's Motion to Dismiss is **GRANTED** with respect to the Second Claim, which is hereby **DISMISSED** as previously stated herein; and

Defendant's Motion to Dismiss is **GRANTED** with respect to the Fourth, Fifth, Sixth, and Seventh Claims, which are hereby **DISMISSED WITHOUT PREJUDICE** and with leave to amend.  Plaintiff is **DIRECTED** to file any amended complaint amending such part or portions of the First Amendment Complaint as permitted by this Order no later than **FOURTEEN (14) DAYS** from the date hereof.  The Defendant shall file its responsive pleading within **FOURTEEN (14) DAYS** of the filing of any second amended complaint.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge
UNITED STATES DISTRICT JUDGE

Norfolk, VA
June 22, 2017

29